THE CITY OF PEORIA, Plaintiff-Appellant, v. ILLINOIS COMMERCE COMMISSION, Defendant-Appellee.

Third District   No. 3—84—0396

Opinion filed April 25, 1985.

James A. Murphy and David L. Thomas, both of Peoria, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Hercules F. Bolos, Allen C. Wesolowski, and Eva-Maria Wohn, Special Assistant Attorneys General, of Chicago, of counsel), for appellee.

JUSTICE STOUDER delivered the opinion of the court:

The city of Peoria (Peoria) appeals from a judgment of the circuit court of Peoria County confirming certain orders of the Illinois Commerce Commission (ICC).

The facts are undisputed. In 1975, the Illinois General Assembly enacted "An Act in relation to the designation of an emergency telephone number for use throughout the State" (911 Act) (Ill. Rev. Stat. 1983, ch. 134, par. 31 *et seq.*). On June 8, 1977, the ICC adopted a resolution to commence formal proceedings leading to the adoption of its General Order 207, "Standards of Service Applicable to 911 Emergency Systems." On December 27, 1979, the ICC entered an order pursuant to its procedures under the Public Utilities Act (Act) (Ill. Rev. Stat. 1983, ch. 111⅔, par. 1 *et seq.*), adopting as rules binding on units of local government, General Order 207. Peoria filed an application for rehearing or reconsideration and the ICC subsequently, on July 16, 1980, entered its "ORDER ON RECONSIDERATION," which, with only minor wording changes to General Order 207, affirmed the earlier December 27, 1979, order. Peoria then filed a complaint for administrative review in the circuit court of Peoria County. The court found that the ICC's orders of December 27, 1979, and July 16, 1980, are not contrary to the manifest weight of the evidence nor contrary to law, and are within the jurisdiction conferred upon the ICC pursuant to the 911 Act.

On appeal, we are asked to decide whether the 911 Act vested authority in the ICC to regulate the operation of emergency communications centers by local governments. Peoria contends the primary role of the ICC is to exercise its expertise and authority to regulate the telephone companies, while it aids and assists local governments as they deal with those telephone companies in setting up telephone systems to service their 911 emergency communications centers. The gist of this contention is that Peoria views the 911 Act as either creating an exhortatory role for the ICC or that the provisions are only applicable to telephone companies. The ICC maintains that the intent of the legislature was to give the ICC ongoing authority to supervise all aspects of 911 systems. For the following reasons, we affirm.

■■ ■ We note initially that the ICC is an administrative body which was established by and derives its authority from the Public Utilities Act. (Ill. Rev. Stat. 1983, ch. 111⅔, par. 1 *et seq.*) The pur-

pose of the Act is to provide for regulation of public utilities, and its provisions grant authority to the ICC over the ownership and operation of "public utilities" as the term is defined therein. (*Inland Real Estate Corp. v. Village of Palatine* (1982), 107 Ill. App. 3d 279, 437 N.E.2d 883.) The ICC has no authority except that expressly conferred upon it (*Black Hawk Motor Transit Co. v. Illinois Commerce Com.* (1947), 398 Ill. 542, 76 N.E.2d 478), and is without power to extend its jurisdiction, as that is within the prerogative of the legislature. *Illinois-Indiana Cable Television Association v. Illinois Commerce Com.* (1973), 55 Ill. 2d 205, 302 N.E.2d 334.

■ A statute should be evaluated as a whole; each provision should be construed in connection with every other section and in light of the statute's general purpose. (*Miller v. Department of Registration & Education* (1979), 75 Ill. 2d 76, 387 N.E.2d 300.) The 911 Act begins with a statement of its "declaration and purpose":

> "The General Assembly finds and declares that it is in the public interest to shorten the time required for a citizen to request and receive emergency aid \*\*\* further \*\*\* that the establishment of a uniform, statewide emergency number is a matter of statewide concern and interest to all inhabitants and citizens of this State. It is the purpose of this Act to establish the number '911' as the primary emergency telephone number for use in this State and to encourage units of local government and combinations of such units to develop and improve emergency communication procedures and facilities in such manner as to be able to quickly respond to any person calling the telephone number '911' seeking police, fire, medical, rescue, and other emergency services." Ill. Rev. Stat. 1983, ch. 134, par. 31.

Section 3 of the 911 Act mandates that every local public agency in a county having 100,000 or more inhabitants within its respective jurisdiction shall establish a basic or sophisticated system as specified in the 911 Act and that other public agencies may establish such a system. (Ill. Rev. Stat. 1983, ch. 134, par. 33.) "Basic system" means a telephone service which automatically connects a person dialing the digits "911" to an established public safety answering point through normal telephone service facilities. (Ill. Rev. Stat. 1983, ch. 134, par. 32.07.) "Sophisticated system" means a basic system with the additional capability of automatic identification of the caller's number, holding the incoming call, reconnection on the same telephone line, clearing a telephone line, or automatic call routing or combinations of such capabilities. (Ill. Rev. Stat. 1983, ch. 134, par. 32.08.) Section 6

provides that the most critical aspect of the design of any system is the procedure established for handling a telephone request for emergency services. Ill. Rev. Stat. 1983, ch. 134, par. 36.

Section 7 mandates that the ICC shall establish a general overview or plan to effectuate the purposes of the 911 Act. (Ill. Rev. Stat. 1983, ch. 134, par. 37.) Section 8 further mandates that the ICC shall coordinate the implementation of systems established under the 911 Act and shall assist local public and public safety agencies in obtaining financing help to establish emergency phone service, and shall aid such agencies in the foundation of concepts, methods, and procedures which will improve the operations of systems required by the 911 Act. (Ill. Rev. Stat. 1983, ch. 134, par. 38.) Section 10 requires that the ICC shall establish and review technical and operational standards for the development of the local agency systems. Ill. Rev. Stat. 1983, ch. 134, par. 40.

Section 11 mandates that those public agencies required to establish a system shall within the time specified submit tentative plans of the establishment of the system to the public utility providing public telephone service within their respective jurisdictions. Further, within the time specified these public agencies shall submit final plans for the establishment of the system to such utilities for the system's implementation. A copy of the plan required by this section shall be filed with the ICC. In order to secure compliance with the standards promulgated under section 10, the ICC shall have the power to approve or disapprove such plan. Ill. Rev. Stat. 1983, ch. 134, par. 41.

■ A careful reading of the 911 Act as a whole discloses that the ICC's role is contemplated to be more than merely advisory to governmental units or merely the regulation of telephone companies. We agree with the ICC's contention that it is difficult to believe the legislature would have enacted a statute to create a uniform statewide emergency telephone system and also intend that there should be no agency to ensure the 911 systems are functioning properly once they are established.

Section 6 declares the most critical aspect of any system is the procedure established for handling a telephone request for emergency services. Section 10 mandates the ICC to establish and review technical and operational standards for the development of local agency systems. Each of the foregoing sections addresses itself to operations, standards and procedures beyond the operation of a telephone utility, and we are directed at the functions of the local agencies as users rather than the telephone companies as utilities. If the statutory provisions are to be carried out, mere regulation of the telephone com-

pany utility would not be within the scope of the provisions of the 911 Act. Indeed, no legislation applicable to 911 systems would be necessary, since the authority of the ICC is already sufficient to regulate such activities of a telephone utility. Section 11 grants the ICC power to secure compliance with the standards it promulgates under section 10. The language of these provisions does not support Peoria's conclusion that toothless homilies were intended or that the statute was only intended to apply to telephone companies. A contrary interpretation would lead to the conclusion that this statute would not be needed at all.

The legislature intended the ICC to be the agency responsible for the implementation and ongoing supervision of 911 systems. We find General Order 207 was an appropriate exercise of the ICC's statutory authority. The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

HEIPLE, P.J., and BARRY, J., concur.