THE PEOPLE *ex rel.* GEORGE RYAN, Secretary of State, *et al.*, Plaintiffs-Appellants, v. LUJACK SCHIERBROCK CHEVROLET COMPANY, d/b/a Lujack Auto Plaza, Defendant-Appellee.

Third District   Nos. 3—93—0362, 3—93—0364 cons.

Opinion filed March 25, 1994.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Alison E. O'Hara, Assistant Attorney General, of counsel), for appellants George Ryan, Reynolds Motor Co., and Illinois New Car and Truck Dealers Association.

Julie A. Cardosi, of Springfield, for other appellants.

Califf & Harper, of Moline (James S. Zmuda and Roger L. Strandlund, of counsel), for appellee.

PRESIDING JUSTICE SLATER delivered the opinion of the court:

The plaintiffs filed two complaints against defendant Lujack Schierbrock Chevrolet Co., d/b/a Lujack Auto Plaza, alleging, *inter alia*, that defendant's automobile display at the Quad City Airport violated certain provisions of the Illinois Vehicle Code (the Code) (Ill. Rev. Stat. 1991, ch. 95$^1$/2, par. 1—100 *et seq.*). Following a hearing, the trial court granted summary judgment in favor of defendant on all counts. Plaintiffs appeal and we affirm.

The facts of this case are not in dispute. Defendant is a car dealership incorporated in the State of Iowa with its principal place of business in Davenport, Iowa. Since September of 1988, defendant has maintained a display at the Quad City Airport terminal building in Moline, Illinois. The display consists of one automobile under a rectangular arch. "Lujack's Auto Plaza" is printed across the horizontal portion of the arch above the automobile, along with the defendant's business address and phone number. The vertical sides of the arch contain a list of the brands of cars sold by defendant and the phrase, "Your one stop auto shop." Defendant rented the space for its display under a contract with the Metropolitan Airport Authority. Other car dealers have similar displays at the airport. Defendant is not licensed as a new or used vehicle dealer by the State of Illinois.

On April 10, 1991, the Secretary of State of the State of Illinois filed a complaint against defendant on behalf of the people of the State of Illinois. The complaint alleged that defendant's display at the airport was in violation of section 5—101 of the Code because defendant was not licensed as a new car dealer in Illinois. The complaint also alleged that the display violated an Illinois Administrative Code regulation that required Illinois licensed dealers to obtain a permit in order to participate in a trade show or exhibition. (See 92

Ill. Adm. Code § 1020.10(c) (1991).) This regulation became a statutory requirement when section 5—102.1 of the Code became effective during the pendency of this case. (See Ill. Rev. Stat. 1991, ch. 95$^1$/$_2$, par. 5—102.1.) The Secretary requested a permanent injunction prohibiting defendant from displaying a vehicle at the airport without obtaining a license and permit.

On November 5, 1991, five Illinois car dealers and the Illinois New Car Dealers Association (hereinafter collectively referred to as the Car Dealers) filed a two-count complaint against defendant. The first count was similar to the Secretary's complaint and alleged the same violations. Count II alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1991, ch. 121$^1$/$_2$, par. 261 *et seq.*) and the Uniform Deceptive Trade Practice Act (Ill. Rev. Stat. 1991, ch. 121$^1$/$_2$, par. 311 *et seq.*). The car dealers sought preliminary and permanent injunctions, damages, and attorneys fees and costs.

All parties filed motions for summary judgment. A hearing on the motions was held on February 2, 1993. Also on that date, upon stipulation of the parties, the court entered an order consolidating the Secretary's complaint and count I of the Car Dealers' complaint.

On April 2, 1993, the court entered summary judgment in favor of defendant and against all plaintiffs. The court found that defendant's display was simply an advertisement. Therefore, defendant was not required to obtain a license or permit under the Code in order to maintain its display. The court also ruled in favor of defendant on count II of the Car Dealers' complaint. The Secretary and the Car Dealers filed separate notices of appeal from the trial court's order. The appeals were consolidated by this court.

Concerning the issues relevant to this appeal, the arguments of the Secretary and the Car Dealers are essentially the same. Therefore, for the sake of clarity, we will refer to these parties collectively as plaintiffs unless otherwise noted.

Plaintiffs first argue that the trial court erred in finding that defendant's airport display was not in violation of section 5—101 of the Code. That section provides in relevant part as follows:

"New vehicle dealers must be licensed. (a) No person shall engage in this State in the business of selling or dealing in *** new vehicles of any make *** or represent or advertise that he is so engaged or intends to so engage in such business unless licensed to do so in writing by the Secretary of State under the provisions of this Section." (Ill. Rev. Stat. 1991, ch. 95$^1$/$_2$, par. 5—101.)

Plaintiffs contend that by maintaining the display at the airport, defendant is engaging in the business of selling or dealing in new cars

in the State of Illinois. Therefore, plaintiffs argue, the display is in violation of section 5—101 since defendant is not an Illinois licensed new car dealer.

The statute does not define the terms "selling" or "dealing." However, a primary rule of statutory construction is that a court must give the language of the statute its plain and ordinary meaning. (*Henry v. St. John's Hospital* (1990), 138 Ill. 2d 533, 563 N.E.2d 410.) The reason for this is that the language of the statute is the "best indication of the intent of the drafters." (*Henry*, 138 Ill. 2d at 541, 563 N.E.2d at 414.) Giving these terms their plain and ordinary meaning, we find that defendant is not "selling" or "dealing" in new cars in Illinois by maintaining its airport display.

■ First, defendant is clearly not selling cars in the State of Illinois. Defendant has no employees in Illinois, nor does defendant have a place of business in Illinois. There are no salesmen at the airport attempting the sell the car on display. The fact of the matter is that one cannot buy a car from defendant at the airport. Plaintiffs argue that a "consumer can inspect the vehicle in Illinois, step to a telephone in the airport, and place an order for the vehicle." Even under this unlikely scenario, the fact remains that the actual *sale* would occur at defendant's place of business in Iowa since that is where the offer to purchase would be accepted. Moreover, a consumer could just as easily step to a telephone and place an order for a vehicle he or she saw in an out-of-State dealer's newspaper or television advertisement. Plaintiffs acknowledge that out-of-State dealers need not be licensed to advertise in Illinois. It is clear that defendant is not engaged in the business of selling cars in Illinois for the simple reason that one cannot buy a car from defendant in Illinois.

Similarly, defendant is not "dealing" in new cars in Illinois. Plaintiffs rely on a dictionary definition of a "deal" as "[a]n arrangement to attain a desired result ***; the prime object being usually the purchase, sale, or exchange of property for a profit." (Black's Law Dictionary 359 (5th ed. 1979).) Plaintiffs then argue that defendant's contract with the airport is an arrangement to obtain a desired result the prime objective of which is to sell cars. Therefore, plaintiffs contend, defendant is dealing in new cars in Illinois. We disagree.

The contract between defendant and the airport does not allow defendant to sell cars in Illinois. The contract merely allows defendant to advertise that it is in the business of selling new cars in *Iowa*. And again, anytime an out-of-State dealer contracts to advertise in an Illinois newspaper, the prime objective of the advertisement is to sell cars. As stated above, plaintiffs concede that such advertising

does not require a license. We find that, even under plaintiffs' definition, defendant's display does not constitute "dealing" in new cars in Illinois.

■ Plaintiffs next argue that if defendant is not engaged in the business of selling or dealing in new vehicles in Illinois, then defendant's display represents or advertises that defendant is so engaged in violation of section 5—101. This argument is completely without merit. Defendant's display clearly represents that defendant is in the business of selling new cars in Iowa. The display states that defendant's place of business is located in Davenport, Iowa. It lists a Davenport address and a Davenport phone number. Nowhere on defendant's display is the representation made that defendant is in the business of selling or dealing in new cars in Illinois.

Plaintiffs next argue that defendant's display is in violation of section 5—102.1(b) of the Code, which provides that "[a] licensed new or used vehicle dealer shall not engage in any exhibition without an exhibition permit issued by the Secretary under this Section." (Ill. Rev. Stat. 1991, ch. 95¹/₂, par. 5—102.1(b).) Plaintiffs' argument that defendant is required to obtain an exhibition permit in order to maintain its display is also meritless.

The term "exhibition" is specifically defined in the Code as follows:

> " 'Exhibition' means a temporary display of vehicles, for a period of not more than 30 days, by a dealer licensed under Section 5—101 or 5—102, at a trade show or similar event at which no vehicles are offered for sale, that is conducted at a place other than the dealer's established and additional places of business." (Ill. Rev. Stat. 1991, ch. 95¹/₂, par. 5—100.)

The statutory definition of a word is authoritative evidence of the legislature's intent and should be given controlling effect. *Laborer's International Union of North America, Local 1280 v. Illinois State Labor Relations Board* (1987), 154 Ill. App. 3d 1045, 1059, 507 N.E.2d 1200, 1209.

■ Defendant's display is clearly *not* an exhibition as that term is defined in the Code because the display is not a temporary display of vehicles at a *trade show or similar event*. Plaintiffs do not even argue that defendant's display constitutes or is part of a trade show or similar event. Therefore, because defendant's display does not constitute an "exhibition" as defined in the Code, defendant is not required to obtain an exhibition permit under section 5—102.1(b).

In short, we agree with the trial court that defendant's display is nothing more than a three-dimensional advertisement which is not subject to the license requirements of section 5—101 or the permit

requirements of section 5—102.1(b). We note that many vehicle dealers maintain billboard advertisements which contain full-size cars. One could hardly argue that such an advertisement, in and of itself, constitutes selling or dealing in new vehicles or participation in an exhibition. We see no reason why this advertisement should be different merely because the vehicle here is on the ground in an airport rather than 30 feet in the air along an expressway. The inclusion of a single automobile in an advertisement display does not have the talismanic effect of transforming the location of that display into a trade show or sales location. Defendant's display is simply an advertisement, and defendant is not required to obtain a license to advertise in the Quad City Airport.

Our decision that defendant is not required to obtain a license or permit to maintain its display does not contravene the legislative intent behind the Code as plaintiffs claim. Section 5—100—1 of the Code states that the intent of the legislature in enacting the provisions in question was "to establish a system of mandatory licensing and record keeping which will prevent or reduce the transfer or sale of stolen vehicles or their parts within this State." (Ill. Rev. Stat. 1991, ch. 95$^{1}$/$_{2}$, par. 5—100—1.) We fail to see how this important goal would be furthered by requiring defendant to obtain a license in order to maintain its advertising display at the airport. As pointed out above, defendant maintains no place of business in Illinois, has no employees working in Illinois, and does not sell vehicles in Illinois. Any vehicle purchased from defendant must be purchased in Iowa. Since defendant does not sell vehicles in Illinois, requiring defendant to be a licensed Illinois vehicle dealer could not possibly prevent or reduce the sale of stolen vehicles in this State.

■ Defendant has argued that if the licensing and permit provisions of the Code are applicable to its display, then those provisions are unconstitutional. However, in light of our determination that these provisions are inapplicable to the defendant in this case, we need not address this argument.

■ Finally, the plaintiff Car Dealers contend that the trial court erred in entering judgment against them on count II of their complaint because that count was not consolidated with the Secretary's complaint. Count II alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act and the Uniform Defective Trade Practices Act. However, these allegations were based on defendant's failure to obtain a license and permit in accordance with the Code. As we have already determined, defendant was not required to obtain a license or permit in order to maintain its display. Plaintiffs conceded at oral argument that if defendant is not required

to obtain a license or permit the allegations in count II have no merit. We therefore find that, in light of our disposition here, the trial court did not err in entering judgment in favor of defendant on both counts of the Car Dealers' complaint.

For the reasons stated above, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

BARRY and BRESLIN, JJ., concur.