CATERPILLAR FINANCE CORPORATION, Plaintiff-Appellee, v. GEORGE RYAN, as Secretary of State, et al., Defendants-Appellants.

Third District    No. 3—93—0749

Opinion filed September 23, 1994.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Deborah L. Ahlstrand, Assistant Attorney General, of counsel), for appellants.

McDermott, Will & Emery, of Chicago (Richard A. Hanson, of counsel), for appellee.

JUSTICE BARRY delivered the opinion of the court:

Plaintiff Caterpillar Finance Corporation (CFC) is a foreign corporation incorporated in Delaware with its principal place of business in Peoria, Illinois. CFC brought this tax protest action upon paying its annual franchise tax. CFC contended that it had reduced its paid-in capital from $56 million to $1,000 by a liquidation distribution, thus reducing its franchise tax from $56,000 to $25. The Secretary of State rejected this reduction and CFC paid the franchise tax, pursuant to the Secretary's determination, under protest. In the resulting action filed by CFC, the circuit court of Peoria County granted CFC's motion for summary judgment construing the Business Corporation Act of 1983 (Ill. Rev. Stat. 1991, ch. 32, par. 14.25(a))

to allow such reductions in paid-in capital and ordered the Treasurer of the State of Illinois to refund $55,975 to CFC. The Secretary of the State of Illinois, the Treasurer of the State of Illinois and the Department of Business Services for the State of Illinois appeal.

■ Pursuant to the Business Corporation Act of 1983 (Ill. Rev. Stat. 1991, ch. 32, pars. 15.35, 15.65) (the Act), both domestic and foreign corporations must pay an annual franchise tax for the privilege of transacting business in Illinois. The franchise tax is due when the corporation must file its annual report, which is during the 60-day time period preceding the first day of the corporation's anniversary month. (Ill. Rev. Stat. 1991, ch. 32, pars. 15.35, 15.65, 14.10.) A corporation's anniversary month is the month in which the certificate of authority was issued. (Ill. Rev. Stat. 1991, ch. 32, pars. 1.80(n)(2), (o).) A foreign corporation's franchise tax is based upon the amount of paid-in capital represented in Illinois on the last day of the third month preceding its anniversary month. (Ill. Rev. Stat. 1991, ch. 32, par. 15.70.) The annual franchise tax is computed at a rate of one-tenth of 1% of the paid-in capital allocated to Illinois subject to a $25 minimum and a $1 million maximum. (Ill. Rev. Stat. 1991, ch. 32, par. 15.75.) In order to reduce a corporation's franchise tax where its paid-in capital has been reduced in accordance with the Act, a corporation must file the appropriate report of the transaction with the Secretary of State. Ill. Rev. Stat. 1991, ch. 32, par. 14.25.

As aforesaid, the subject of this appeal is CFC's annual franchise tax which was due by June 1, 1991. CFC's anniversary month was June; thus, its franchise tax was calculated based on its paid-in capital as of March 31, 1991.

On December 14, 1990, CFC adopted a "Plan of Liquidation" providing for: (1) complete liquidation free from Federal tax; (2) first distribution of all its shares of Caterpillar of Canada, Ltd., to its shareholder, Caterpillar, Inc., to be accomplished prior to December 31, 1990; and (3) all remaining net assets to be distributed to its shareholder, Caterpillar, Inc., in the month of December 1991. Having failed to meet its December 31, 1990, deadline, CFC made the first liquidating distribution of the shares of Caterpillar of Canada to its shareholders in March of 1991 and did not cancel its shares until December of 1991. CFC alleges that through this liquidation action it reduced its paid-in capital from $56 million to $1,000.

On May 24, 1991, CFC submitted a report of reduction of paid-in capital to the Secretary of State, stating that the alleged reduction in paid-in capital was due to the liquidation distribution. The report did not set forth a reduction in the number of CFC shares of stock. Based on the alleged reduction of paid-in capital to $1,000, CFC tendered the minimum $25 as its annual franchise tax.

On June 6, 1991, the Secretary of State's Department of Business Services (Department) returned CFC's 1991 annual report and report of reduction of paid-in capital along with the check submitted by CFC. The Department sent Caterpillar, Inc., letters on July 6 and July 9, 1991, which explained that pursuant to sections 1.80(j) and 9.05 of the Act, "the only basis for reducing the paid-in capital of a corporation is through the reacquisition and cancellation of some of its issued shares," and recalculated CFC's franchise tax at $56,000 plus the $15 filing fee. CFC paid the franchise tax and filing fee of $56,015 under protest on July 30, 1991.

On August 28, 1991, CFC filed a two-count verified complaint under the "Public Monies Act" against George Ryan as the Secretary of State, Patrick Quinn as the Treasurer of the State of Illinois and the Department of Business Services for the State of Illinois. Count I of the complaint stated CFC's March 1991 liquidation distribution asserting that CFC's paid-in capital was reduced from $56 million to $1,000 resulting in a $25 annual franchise tax owed. Count I also sought an order requiring the Secretary of State to accept and file CFC's original 1991 annual report, calculate CFC's franchise tax based on $1,000 of paid-in capital and requiring the Secretary and Treasurer to return to CFC $55,975 of the franchise tax paid under protest plus interest. Count II of the complaint alleged that CFC is entitled to a correction of its paid-in capital represented in Illinois from 100% to 2.677%, which would reduce CFC's franchise tax owed for the year 1991 to $1,499. CFC also filed a motion for preliminary injunction on August 28, 1991, asking the court to enjoin the Secretary of State, Treasurer and the Department from transferring the funds paid by CFC from the special protest fund to the general revenue fund of Illinois. The circuit court granted CFC's motion for a preliminary injunction the same day.

On September 27, 1991, the State defendants (State) filed an answer. In response to count I of CFC's complaint, the State contended that CFC did not properly reduce its paid-in capital because it failed to reacquire or cancel any of its shares, and the provision of the Act that permitted such liquidation distributions had been repealed in 1987. In response to count II of CFC's complaint, the State's answer stated that CFC's correction statement could not be filed without the proper supporting documentation.

On July 17, 1992, CFC filed a motion for summary judgment and the State filed a response to CFC's motion for summary judgment and a cross-motion for summary judgment on September 9, 1992. On April 1, 1993, the circuit court issued a memorandum of decision finding that under the Act, CFC properly reduced its paid-in capital

to $1,000 as of March 1991 although CFC's shares were not cancelled until December 1991.

The issue before this appellate court is whether the Business Corporation Act of 1983 authorizes a foreign corporation conducting business in Illinois to reduce its paid-in capital, and consequently, its franchise tax, through a liquidating distribution prior to the cancellation of the corporation's shares of stock. We find that the Act does not authorize such reductions in paid-in capital, and accordingly, we reverse the decision of the circuit court.

■ In construing the relevant statutory provisions of the Act, it is our goal to ascertain and give effect to the intent of the legislature. (*Granite City Division of National Steel Co. v. Illinois Pollution Control Board* (1993), 155 Ill. 2d 149, 181, 613 N.E.2d 719, 733.) A statute should be interpreted as a whole, and each individual provision should be construed in relation to the other sections of the statute and according to the statute's general purpose. (*City of Peoria v. Illinois Commerce Comm'n* (1985), 132 Ill. App. 3d 835, 837, 477 N.E.2d 749, 750.) In cases of doubt, taxing statutes are strongly construed in favor of the taxpayer. *First National Bank v. Department of Revenue* (1981), 85 Ill. 2d 84, 88, 421 N.E.2d 175, 177.

■ Section 14.25 of the Act states:

"§ 14.25. Report following merger or cancellation of shares/reduction in paid-in capital. (a) Each domestic corporation and each foreign corporation authorized to transact business in this State that is a party to a statutory merger and is the surviving corporation, *or that effects the cancellation of its shares, or that effects a reduction in its paid-in capital in connection with the cancellation of its shares, as permitted by this Act,* and does not report that event to the Secretary of State by any other report required by this Act *** shall execute and file, in accordance with Section 1.10 of this Act, a report ***." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 32, par. 14.25.)

The circuit court construed section 14.25 as allowing corporations to reduce paid-in capital by "distributing the shares prior to the actual cancellation of those shares," reasoning that the legislature must have intended a distinction between the phrases "cancellation of its shares" and "reduction in its paid-in capital in connection with the cancellation of its shares." The court concluded that a corporation could reduce its paid-in capital by either cancelling shares before the statutory deadline or by distributing assets before the deadline and cancelling shares of stock at some later date. We find the circuit court's construction of section 14.25 erroneous in light of other sections of the Act, amendments made to the Act which took effect

January 1, 1987, and the practical implications of the possible constructions of the statute.

Section 14.25 is one of several sections of the Act that instructs corporations to report certain transactions "as permitted by this Act." However, we note that section 14.25 does not authorize the transactions to be reported under that section. We find persuasive the State's construction of section 14.25 which clarifies the "distinction" between the phrases "cancellation of its shares" and "reduction *** in connection with the cancellation of its shares." Because a corporation can cancel shares of stock without necessarily reducing its paid-in capital, section 14.25 mandates a report of both a cancellation of stock (without a reduction in paid-in capital) and any reduction in paid-in capital "in connection with the cancellation of its shares." Thus, the distinction between the two clauses does not necessarily indicate an intent to allow corporations the additional option of reducing paid-in capital for franchise tax purposes and cancelling shares at some date beyond the statutory deadline set forth in section 14.25.

Section 9.05 of the Act authorizes a corporation to acquire its own shares. Upon such an acquisition and cancellation of shares, section 9.05(c) specifically authorizes corporations to reduce paid-in capital "by that part of the paid-in capital which was, *at the time of the cancellation,* represented by the shares so cancelled ***." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 32, par. 9.05(c).) Section 9.05 further mandates that upon acquisition of its own shares, a corporation must file a report under subsection (c) of section 9.05, or section 14.25 or section 14.30 of the Act depending on the circumstances and date of such acquisition. Subsection (e) of section 9.05 states that "[u]ntil the report *** shall have been filed in the office of the Secretary of State, the basis of the annual franchise tax payable by the corporation shall not be reduced ***." Ill. Rev. Stat. 1991, ch. 32, par. 9.05(e).

Through section 9.05 of the Act, the legislature expressed the specific intent to authorize the reacquisition and cancellation of a corporation's own shares and the reduction of paid-in capital resulting from such cancellation. The transactions authorized by section 9.05 are subject to the detailed reporting requirements set forth in sections 9.05(c), 14.25 and 14.30. We find that the specific authorization of reductions of paid-in capital by the cancellation of shares of stock, and the lack of any corresponding section in the Act authorizing the reduction of paid-in capital by liquidating distributions, indicative of the legislature's intent that no such transactions be authorized.

The legislative intent regarding the method for reducing paid-in capital is also indicated in the definition of paid-in capital set forth in the Act. When the legislature specifically defines a term in a statute, that definition is authoritative evidence of the legislature's intent and should be given controlling effect. (*People ex rel. Ryan v. Lujack Schierbrock Chevrolet Co.* (1994), 259 Ill. App. 3d 581, 585, 630 N.E.2d 1346, 1349.) Section 1.80(j) of the Act defines paid-in capital as follows:

"(j) 'Paid-in' capital means the sum of the cash and other consideration received, less expenses, including commissions, paid or incurred by the corporation, in connection with the issuance of shares, plus any cash and other consideration contributed to the corporation by or on behalf of its shareholders, plus amounts added or transferred to paid-in capital by action of the board of directors or shareholders pursuant to a share dividend, share split, or otherwise, *minus reductions from that sum effected by an acquisition of its own shares, to the extent of the cost of the reacquired shares or a lesser amount as may be elected by the corporation.*" (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 32, par. 1.80(j).)

Reading the above-quoted language, it appears that, by definition, the reacquisition of shares is the only method of reducing paid-in capital and the minimum amount of paid-in capital a corporation could claim depends on the cost of the reacquired shares.

We believe this legislative intent is further evidenced by the January 1, 1987, amendment to the definition of paid-in capital. Before the amendment, the definition of paid-in capital in section 1.80(j) provided for reductions in paid-in capital through liquidating distributions evidenced by the language "less any distribution therefrom." The legislature deleted the above-quoted language and added the language "minus reductions from that sum effected by an acquisition of its own shares." (Compare Ill. Rev. Stat. 1985, ch. 32, par. 1.80(j) with Ill. Rev. Stat. 1991, ch. 32, par. 1.80(j).) Thus, although reductions in paid-in capital through a distribution of assets were permitted prior to the January 1, 1987, amendments, the legislature has expressly eliminated such reductions in paid-in capital.

The legislature's intent to disallow liquidating distributions as a method of reducing paid-in capital is also evidenced by the repeal of section 9.15 of the Act. (Pub. Act 84—1412, art. 14, par. 2, eff. January 1, 1987 (repealing Ill. Rev. Stat. 1985, ch. 32, par. 9.15).) Section 9.15 specifically permitted corporations to reduce paid-in capital through "distributions as liquidating dividends as permitted by law." (Ill. Rev. Stat. 1985, ch. 32, par. 9.15.) When the legislature repealed section

9.15, it eliminated the provision of the Act which authorized reductions in paid-in capital by liquidating distributions. We must assume that the legislature eliminated the above-quoted language with the intent of eliminating that method of reducing paid-in capital. Further, we cannot conclude that the legislature intended to replace that specific language with the phrase "reduction in paid-in capital in connection with the cancellation of its shares," from section 14.25 of the current Act.

We also agree with the State that the circuit court's interpretation of the Act creates significant practical difficulties. The circuit court's ruling allows corporations to reduce their franchise tax based on a statement of intention to reacquire shares of stock at some point in the future. We note that in the present case, CFC did not actually cancel its shares until nine months after the liquidating distribution. First, the Act offers no guidance as to what length of time between the liquidating distribution and the cancellation of shares is acceptable. Second, the Act does not provide a reporting procedure for such plans to cancel shares in the future. Third, the Act has no provision for enforcing such plans to cancel shares in the future. We also believe that the fact that these problems are not addressed in the Act indicates that the legislature did not intend corporations such as CFC to proceed as it did in this case.

In sum, the Secretary of State has no way of knowing how much time to allow for the necessary execution of such plans to cancel shares, or any procedure by which to enforce such plans. As the State argues, CFC reported its reduction in paid-in capital without stating its intent to cancel shares in the future, the future cancellation date or the number of shares to be cancelled. Consequently, the circuit court's decision creates an unacceptable administrative nightmare. We construe the language "a reduction in its paid-in capital in connection with the cancellation of its shares" as requiring the cancellation of a corporation's shares to occur prior to or contemporaneously with the reduction in paid-in capital.

In light of the foregoing, we reverse the judgment of the circuit court of Peoria County.

Reversed.

LYTTON and BRESLIN, JJ., concur.