NO. 4-96-0217

                          IN THE APPELLATE COURT

                                OF ILLINOIS

                              FOURTH DISTRICT

VENTURE STORES, INC.,                   )    Appeal from

          Plaintiff-Appellant,          )    Circuit Court of

          v.                            )    Sangamon County

GEORGE RYAN, as Secretary of State,     )    No. 93CH0027

PATRICK QUINN, as Treasurer of the      )

State of Illinois, and THE DEPARTMENT   )    Honorable

OF BUSINESS SERVICES,                   )    Jeanne E. Scott,

          Defendants-Appellees.         )    Judge Presiding.

          JUSTICE GREEN delivered the opinion of the court:

          This case concerns the question of whether the format for

determining the annual franchise taxes of foreign corporations

doing business in Illinois, as provided for by section 15.65(d) of

the Business Corporation Act of 1983 (Business Act) (Ill. Rev.

Stat. 1989, ch. 32, par. 15.65(d)), at times pertinent, violated

the uniformity clause set forth in section 2 of article IX of the

Illinois Constitution of 1970, which states:

               "In any law classifying the subjects or

          objects of non-property taxes or fees, the

          classes shall be reasonable and the subjects

          and objects within each class shall be taxed

          uniformly.  Exemptions, deductions, credits,

          refunds and other allowances shall be

          reasonable."  Ill. Const. 1970, art. IX, §2.

          At all times pertinent, (1) section 15.70 of the Business

Act provided that the annual franchise tax upon foreign

corporations doing business in the state be based upon that

corporation's "paid-in capital" (Ill. Rev. Stat. 1989, ch. 32, par.

15.70)), and (2) section 1.80(j) of the Business Act stated, "paid-

in capital of a foreign corporation shall be determined on the same

basis and in the same manner as paid-in capital of a domestic

corporation, for the purpose of computing *** franchise taxes"

(Ill. Rev. Stat. 1989, ch. 32, par. 1.80(j)).  Section 1.80(j) also

stated:

               "'Paid-in capital' means the sum of the

          cash and other consideration received, less

          expenses, including commissions, paid or

          incurred by the corporation, in connection

          with the issuance of shares, plus any cash and

          other consideration contributed to the

          corporation by or on behalf of its

          shareholders, plus amounts added or

          transferred to paid-in capital by action of

          the board of directors or shareholders

          pursuant to a share dividend, share split, or

          otherwise, minus reductions from that sum

          effected by an acquisition of its own shares,

          to the extent of the amount of paid-in capital

          represented by such acquired shares." 

          (Emphasis added.)  Ill. Rev. Stat. 1989, ch.

          32, par. 1.80(j).

          The record shows that plaintiff, Venture Stores, Inc.

(Venture), is a Delaware corporation which, consistent with the

laws of that state, reduced its capitalization by the distribution

to its sole shareholder, May Department Stores, Inc. (May), of

$262,500,000.  Venture maintains that the foregoing format to

determine the basis for franchise taxes violates the uniformity

clause because the tax scheme unreasonably prevents corporations

such as it from reducing the basis for the franchise tax by this

kind of capital reduction, while a class of corporations that do so

by buying in their own shares are permitted to reduce that basis. 

Venture contends that the resulting classification is unreasonable

within the meaning of the uniformity clause.  We disagree.

            In October 1992, Venture reported a reduction in paid-

in capital in the amount of the capital distribution to the office

of defendant, the Secretary of State (Secretary), and attempted to

pay its 1993 franchise tax based upon its paid-in capital reduced

by the amount of the distribution.  Following the express terms of

the statutory format, the Secretary's office refused to reduce

Venture's paid-in capital and refused to accept the payment as

being in full for the franchise tax.  Pursuant to section 2a of the

State Officers and Employees Money Disposition Act (Money Act) (30

ILCS 230/2a (West 1992)), on January 11, 1993, Venture paid its

1993 franchise tax under protest.  The tax paid was based on paid-

in capital without a  reduction for the capital distribution. 

Subsequently, Venture also paid its 1994 and 1995 franchise taxes

under protest based upon no reduction in the paid-in capital basis. 

In March 1993 it also filed a petition with the Secretary for a

refund of portions of its 1990, 1991, and 1992 franchise taxes

which had been based upon paid-in capital that had no reduction for

the capital distribution.

          Acting pursuant to section 2a of the Money Act, on

February 8, 1993, Venture filed a three-count complaint in the

circuit court of Sangamon County.  The only count before us is

count II, which charged that the statutory format applied by the

Secretary in assessing annual franchise tax fees violated the

uniformity clause.  The Secretary, the State Treasurer, and the

Illinois Department of Business Services (Department) were joined

as defendants.  Distribution of the money by the State Treasurer

was temporarily enjoined.  Both sides requested summary judgments. 

On June 22, 1995, the circuit court entered summary judgment as to

count II in favor of defendants and denied Venture's request for

summary judgment.  That judgment is now final as to all claims and

parties, and Venture has appealed.  We affirm.

          The uniformity clause case most analogous to the instant

case is Searle Pharmaceuticals, Inc. v. Department of Revenue, 117

Ill. 2d 454, 512 N.E.2d 1240 (1987).  There, the supreme court held

that section 203(e)(2)(E) of the Illinois Income Tax Act (Ill. Rev.

Stat. 1979, ch. 120, par. 2-203(e)(2)(E)) violated the uniformity

clause when it allowed corporate taxpayers, in an affiliated group

of corporations which had not elected to file a federal

consolidated income tax return, to carry their net operating losses

back to arrive at their state base income, while those corporations

in an affiliated group which had elected to file a consolidated

federal return were required to carry their net operating losses

forward.  At issue was the disparity in tax treatment between two

classes of otherwise identically situated corporations of an

affiliated group--one class electing to file a consolidated return,

the other class not electing to file a consolidated return.  The

Searle court articulated the test to determine whether taxpayer

classifications met the requirements of the uniformity clause as

follows:

          "[T]he classification must be based on a real

          and substantial difference between the people

          taxed and those not taxed, and that the

          classification must bear some reasonable

          relationship to the object of the legislation

          or to public policy."  (Emphasis in original.) 

          Searle, 117 Ill. 2d at 468, 512 N.E.2d at

          1246.

          The Searle court rejected the Department of Revenue s

justification for the disparity in tax treatment, that being to (1)

clarify an ambiguity, (2) further administrative convenience and

budgeting concerns, and (3) generate state income.  The court held

the Department could not maximize the state income in an arbitrary

and capricious manner by classifying corporate taxpayers where

there is "no real and substantial difference between these two

classes rationally related to this stated objective."  Searle, 117

Ill. 2d at 478, 512 N.E.2d at 1250.

          The posture of a taxpayer such as Venture and that of the

state, in a proceeding where the taxpayer challenges a tax on the

basis of a claimed violation of the uniformity clause, is explained

in Allegro Services, Ltd. v. Metropolitan Pier & Exposition

Authority, 172 Ill. 2d 243, 665 N.E.2d 1246 (1996), and Geja's Cafe

v. Metropolitan Pier & Exposition Authority, 153 Ill. 2d 239, 606

N.E.2d 1212 (1992).  Both cases involved uniformity clause

challenges to nonproperty taxes imposed by the Metropolitan Pier

and Exposition Authority based upon the proximity of the taxpayer's

property to the McCormick Place exposition building.

          In Geja's Cafe, the supreme court stated:

          "[W]e preface this discussion by noting the

          relatively narrow scope of the court's inquiry

          when a tax has been challenged on uniformity

          grounds.  Statutes are presumed constitu-

          tional, and broad latitude is afforded to

          legislative classifications for taxing

          purposes.  A plaintiff challenging such a

          classification has the burden of showing that

          it is arbitrary or unreasonable; if a state of

          facts can be reasonably conceived that would

          sustain it, the classification must be upheld.

          Illinois Gasoline Dealers Association v. City

          of Chicago (1988), 119 Ill. 2d 391, 403.

               We also note that the burdens placed on

          each party by Illinois Gasoline, in

          conjunction with Searle, may not be entirely

          clear, and we clarify them today.  A plaintiff

          is not required to come forward with any and

          all conceivable explanations for the tax and

          then prove each one unreasonable; this was

          specifically rejected in Searle, 117 Ill. 2d

          at 468[, 512 N.E.2d at 1246].  Rather, these

          cases stand for the proposition that, upon a

          good-faith uniformity challenge, a taxing body

          must produce a justification for its

          classifications.  The plaintiff then has the

          burden to persuade the court that the

          defendant s explanation is insufficient as a

          matter of law, or unsupported by the facts, to

          satisfy the Searle test.  If the plaintiff is

          unable to do this, judgment is proper as a

          matter of law.  As we shall see, plaintiffs

          fail to meet their burden of persuasion with

          any of their three challenges."  (Emphasis

          added.)  Geja s Cafe, 153 Ill. 2d at 248-49,

          606 N.E.2d at 1216.

          In Allegro Services, where both sides had also moved for

summary judgment, the court stated:

               "We also take note of the procedural

          posture of this case, which is before us on

          the trial court's ruling in favor of the

          Authority on the parties' cross-motions for

          summary judgment.  Summary judgment is

          ppropriate where 'the pleadings, depositions,

          and admissions on file, together with the

          affidavits, if any, show that there is no

          genuine issue as to any material fact and that

          the moving party is entitled to a judgment as

          a matter of law.'  735 ILCS 5/2-1005(c) (West

          1994); Gilbert v. Sycamore Municipal Hospital,

          156 Ill. 2d 511, 517-18 (1993).  The purpose

          of summary judgment is not to try a question

          of fact, but to determine whether one exists. 

          Gilbert, 156 Ill. 2d at 517.  Plaintiffs are

          not required to prove their case at the

          summary judgment stage.  However, to survive a

          motion for summary judgment, the nonmoving

          party must present a factual basis which would

          arguably entitle him to a judgment.  E.g.,

          Gauthier v. Westfall, 266 Ill. App. 3d 213,

          219 (1994).  Accordingly, in the present case,

          to the extent the Authority has produced a

          legally sufficient justification for its tax

          classification, plaintiffs would then be

          required to present a factual basis negating

          the asserted justification to survive

          defendant s motion for summary judgment. 

          Conversely, if the Authority has failed to

          produce a legally sufficient justification for

          the classification, plaintiffs would be

          entitled to a judgment as a matter of law." 

          (Emphasis added.)  Allegro Services, 172 Ill.

          2d at 255-56, 665 N.E.2d at 1254.

          Defendants contend first that the statutory provisions at

issue concern the internal organization and financing of a

corporation doing business in Illinois and are not tax legislation

subject to the uniformity clause.  As far as foreign corporations

such as Venture are concerned, defendants admit this is not so, as

the laws of the state of their incorporation control their internal

organization and financing, and the nature of "paid-in capital" is

significant only for the purpose of determining the franchise tax

for doing business in the state.  However, defendants assert that

the classification created for domestic corporations, if reasonable

for internal control on domestic corporations, is reasonable to

impose on foreign corporations to keep foreign and domestic

corporations on an equal basis for taxing their authorization to do

business in Illinois.

          Upon enactment of the Business Act, section 1.80(j)

defined "paid-in capital" in the following manner:

               "'Paid-in capital' means the sum of the

          cash and other consideration received, less

          expenses, including commissions, paid or

          incurred by the corporation, in connection

          with the issuance of shares, plus any cash and

          other consideration contributed to the

          corporation by or on behalf of its

          shareholders or transferred to paid-in capital

          by action of the board of directors or

          shareholders, less any distribution

          therefrom."  (Emphasis added.)  Ill. Rev.

          Stat. 1985, ch. 32, par. 1.80(j).

          The official comments of the committee drafting the

Business Act state with reference to section 1.80(j), as follows:

               "'Paid-in capital', a new term, is

          defined.  'Paid-in capital' is intended to be

          a substitute for the concepts of 'stated

          capital' and 'paid-in surplus' of the 1933

          Act, reflecting a revision of the financial

          provisions and conforming to the proposed 1983

          Revised Model Business Corporation Act.  The

          drafters recognize that the principles once

          supporting the use of the terms 'par value',

          'stated capital', and 'paid-in surplus' are no

          longer valid.  Traditionally, those terms

          offered a form of protection and security to

          creditors and preferred shareholders.  Today,

          provisions based on these terms are

          meaningless, if not misleading, because many

          corporations have authorized shares with a

          nominal par value or without par value.  In

          addition, the elimination of 'stated capital'

          and 'paid-in surplus' is consistent with the

          provisions of [section 9.10 of the Business

          Act (Ill. Rev. Stat. 1985, ch. 32, par.

          9.10)], the section governing all

          distributions under the 1983 Act, including

          dividends and redemptions.  A distribution

          will be prohibited only if it would (a) render

          the corporation insolvent or (b) reduce the

          net assets to less than zero or less than the

          maximum amount payable to preferred

          shareholders in liquidation if the corporation

          were then liquidated.  The limitation in

          [section 9.10] is expressed without the use of

          the terms 'stated capital' or 'paid-in

          surplus'; thus, no definition of these

          concepts is needed."  2 Ill. Bus. Corp. Act

          Ann., app. F., at 372 (3d ed. Supp. 1984). 

          Section 9.15(a)(3) of the Business Act originally

permitted corporations to reduce paid-in capital through

"distributions as liquidating dividends as permitted by law."  Ill.

Rev. Stat. 1985, ch. 32, par. 9.15(a)(3).  At that time, section

9.10(c)(2) of the Business Act permitted liquidating dividends to

be used by a corporation to reduce paid-in capital subject to

certain restrictions, one of which was that the dividend did not

leave the corporation insolvent or with liabilities greater than

assets.  Ill. Rev. Stat. 1985, ch. 32, par. 9.10(c)(2).  A summary

of the Business Act compiled by a committee selected by the

Secretary and which drafted the Business Act, explained:

               "A new section entitled 'Distributions to

          Shareholders' is the heart of the financial

          changes incorporated in the 1983 Act.  [Ill.

          Rev. Stat. 1985, ch. 32, par. 9.10.]  Both

          dividends and repurchase of shares are

          encompassed within the notion of

          'distributions', and the Board now has general

          power to authorize any distribution, subject

          to any restriction in the Articles and also

          subject to the limitation that a distribution

          may not be made if, after giving it effect,

          either (a) the corporation would be insolvent

          or (b) the net assets of the corporation would

          be less than zero or less than the maximum

          amount payable upon shares having a

          preferential right upon liquidation.

               Illinois has been an 'earned surplus'

          state; that is, dividends could be paid or

          shares repurchased only 'out of' earned

          surplus.  Even in Illinois, dividends in

          partial liquidation or dividends upon

          preferred shares could be paid 'out of' paid-

          in surplus, and shares that were deemed

          'redeemable' could be purchased without regard

          to earned surplus.  Since the 1940's, many

          states have provided additional flexibility

          with respect to dividends and repurchase of

          shares by permitting such repurchases out of

          paid-in surplus as well as earned surplus. 

          Thus, the only sacrosanct account was 'stated

          capital' but, since this was a function of the

          par value of the shares and the par could be

          reduced to a nominal amount, the protection

          afforded by providing that distributions could

          not be made out of stated capital was largely

          illusory.  Accordingly, the 1933 Act has now

          been modified to delete reference to capital

          accounts as a control upon distributions and

          has instead adopted the approach now embodied

          in the new Model Act.  [Ill. Rev. Stat. 1985,

          ch. 32, par. 9.10.]

               Since 'par' and 'stated capital' tend to

          be misleading concepts, they have been deleted

          from the 1983 Act.  Today the concept of par

          value is an anachronism.  The 1983 Act also

          substitutes the concept of 'paid-in capital'

          for what in the past would have been the sum

          of stated capital plus paid-in surplus. 

          Accordingly, Section 19 dealing with the

          determination of stated capital has been

          deleted, and numerous other sections have been

          simplified.

               The 1983 Act also provides that shares

          repurchased by a corporation, in the absence

          of provisions to the contrary in the Articles,

          become authorized but unissued shares and the

          concept of treasury shares has been deleted

          from the 1983 Act.  Section 6 [(Ill. Rev.

          Stat. 1985, ch. 32, par. 9.05)] has been

          redrafted to reflect this approach, and

          Section 60a [(Ill. Rev. Stat. 1985, ch. 32,

          par. 9.15)] has been redrafted to establish

          the mechanism for a corporation to reduce

          paid-in capital."  2 Ill. Bus. Corp. Act Ann.,

          app. D, §II, at 209 (3d ed. Supp. 1984).

          An experienced corporate law practitioner concluded that

upon the enactment of the Business Act, "the concept of corporate

capital *** serves the single purpose *** of providing the basis

for the Illinois corporate franchise tax and license fee."  J. Van

Vliet, The New Illinois Business Corporation Act Needs More Work,

61 Chi.-Kent L. Rev. 42 (1985).  Then, the General Assembly amended

section 1.80(j) to place it in the form pertinent here, repealed

section 9.15 and amended section 14.25.  Pub. Act 84-1412, art. 14,

§1,  eff.  January 1, 1987  (1986  Ill. Laws 3470, 3500-01, 3510, 

3507-08) (amending Ill. Rev. Stat. 1985, ch. 32, par. 1.80(j);

repealing Ill. Rev. Stat. 1985, ch. 32, par. 9.15; amending Ill.

Rev. Stat. 1985, ch. 32, par. 14.25).

          Section 14.25 of the Business Act concerns certain

required reports to the Secretary concerning changes in paid-in

capital.  The original section 14.25 required such a report when

paid-in capital was reduced by either a capital deduction or a

repurchase of shares.  See Ill. Rev. Stat. 1985, ch. 32, par.

14.25.  The amended section makes no mention of a capital

distribution.  See Ill. Rev. Stat. 1987, ch. 32, par. 14.25.

          We conclude that the combined effect of these amendments

was that, although former concepts of corporate capital were not

all retained, the concept of paid-in capital was significant not

only in regard to franchise taxes but also in regard to protection

the Business Act was deemed to give to shareholders or creditors,

although the protection is not easy to define.  In eliminating the

words "less any distribution therefrom" from the definition of

paid-in capital under section 1.80(j) of the Business Act and

adding a provision to reduce the amount of paid-in capital arising

from the repurchase of shares, the General Assembly seemed to have

indicated that paid-in capital could not be reduced by

"distribution therefrom."  Ill. Rev. Stat. 1985, ch. 32, par.

1.80(j); Ill. Rev. Stat. 1989, ch. 32, par. 1.80(j).

          The foregoing interpretation is made more certain by the

action in repealing section 9.15 of the Business Act, which spoke

of permitting the reduction of paid-in capital by legally

permissible "liquidating dividends."  Ill. Rev. Stat. 1985, ch. 32,

par. 1.80(j).  This interpretation is not negated by the continued

existence of section 9.10 of the Business Act, which speaks of

distributions in general without any reference to those arising

from capital.  See 805 ILCS 5/9.10 (West 1994).  Our interpretation

of the effect of the amendments is consistent with that of the

third district in Caterpillar Finance Corp. v. Ryan, 266 Ill. App.

3d 312, 640 N.E.2d 672 (1994).  There, a foreign corporation

attempted to reduce its paid-in capital by a partial liquidating

deduction prior to reporting a reduction of the shares and was held

liable for a franchise tax based upon a paid-in capital not reduced

by the distribution.

          When viewed merely upon the question of a valid basis for

a franchise tax, a substantial difference between a reduction for

a repurchase of shares and a reduction for a distribution of

capital is difficult to find.  However, when viewed upon the

question of a protection for shareholders and creditors, a

difference is more apparent.  Each theoretically reduces the

corporate capital, but a shareholder can resist any diminution of

its propriety interest by refusing to sell if the proposed

transaction is deemed detrimental to that interest.  A shareholder

has no similar remedy to an unwise return of capital.  Considering

the great deference given to the validity of statutory

classifications by Allegro and Geja's Cafe, we hold there is a

rational basis for the classification here.

          Clearly, a rational system of capitalization, one which

serves public policy (Searle, 117 Ill. 2d at 468, 512 N.E.2d at

1246) is a proper basis for determination of a franchise tax.  No

authority has been called to our attention which prohibits use of

such a basis, even though in detail some classifications result

which are not themselves a rational basis for purely tax purposes.

          We recognize that Venture is a foreign corporation, and

this state does not have control over its capitalization except as

it affects its franchise tax.  However, the treatment of domestic

and foreign corporation on an equal footing is a rational

consideration in imposing those taxes.  

          Venture has characterized much of its argument on the

basis that the instant taxes violate the second rather than the

first sentence of the uniformity clause on the basis that a

reduction from its paid-in capital because of its capital

distribution was a "deduction" within the meaning of that sentence. 

We need not decide whether the first or the second sentence of the

uniformity clause is the key to this case because, in any event,

the question is whether a rational basis exists for the taxes, and

we have concluded that a rational basis was shown.

          Accordingly, we affirm.

          Affirmed.

          GARMAN, J., concurs.

          COOK, J., dissents.

          JUSTICE COOK, dissenting:

          In 1989, May decided to dispose of its discount retail

business.  It did that by transferring all the assets and liabil-

ities of its Venture division to its wholly owned subsidiary,

Venture Stores, Inc., a Delaware corporation.  As a result,

Venture's paid-in capital increased from $1,000 to $319,029,539. 

Then in 1990, Venture made a liquidating distribution of

$262,500,000 to May.  Venture did not acquire or cancel any of its

stock in connection with that distribution; both before and after

the distribution May owned all 1,000 shares of Venture common

stock.  On September 28, 1990, the shares of Venture's common stock

were split 16,808 to 1, and the shares were distributed to May's

shareholders.  Venture is now a publicly owned and traded company. 

          In accordance with Generally Accepted Accounting

Principles (GAAP), the distribution was shown on Venture's books,

and in reports submitted to the Internal Revenue Service and to the

Securities and Exchange Commission, as a decrease in the capital of

the corporation.  However, because Venture did not acquire or

cancel any of its shares in connection with the distribution,

Venture was not allowed to reduce its Illinois "paid-in capital,"

on which its annual franchise tax is based.  See Ill. Rev. Stat.

1989, ch. 32, par. 1.80(j); Caterpillar, 266 Ill. App. 3d 312, 640

N.E.2d 672.         

          If May had surrendered just one share for cancellation in

connection with the distribution, paid-in capital could have been

reduced.  See Ill. Rev. Stat. 1989, ch. 32, par. 1.80(j) (reduction

"to the extent of the amount of paid-in capital represented by such

acquired shares").  The Department disagrees that the surrender of

just one share would have been effective.  See 805 ILCS 5/1.80(j)

(West 1992) (paid-in capital is reduced by "cost of the reacquired

shares or a lesser amount as may be elected by the corporation"). 

Whatever the number, it is clear that if May had surrendered some

shares for cancellation, its paid-in capital would have been

reduced.  There is no indication in the record that May or Venture

would have been disadvantaged by surrendering and canceling shares. 

May owned all the stock of Venture, whether it owned 1,000 shares,

500 shares, or 5 shares.  The Department suggests the choice to

proceed by way of a liquidating dividend could have been "sheer

carelessness" on Venture's part, or it could have been a calculated

decision "perhaps because a liquidating dividend had certain

financial advantages."  The Department does not indicate what those

financial advantages might be.  It would appear to be easy for a

corporation which does business in many states to overlook

Illinois' unusual definition of paid-in capital.  

          Although Venture's assets have now been permanently

reduced by $262,500,000, its paid-in capital can never be changed

to reflect that reduction.  Once the distribution was made it was

too late for Venture to acquire and cancel any shares.  Section

14.25 of the 1983 Business Act is construed "as requiring the

cancellation of a corporation's shares to occur prior to or

contemporaneously with the reduction in paid-in capital." 

Caterpillar, 266 Ill. App. 3d at 319, 640 N.E.2d at 677.  It is

clear, after Caterpillar, that Illinois law distinguishes between

(1) liquidating distributions and (2) distributions accompanied by

the acquisition and cancellation of shares.  The second reduces

paid-in capital, the first does not.  The question now before the

court is whether that distinction violates the uniformity clause of

the Illinois Constitution.  Ill. Const. 1970, art. IX, §2.  The

constitutional issue was not addressed in Caterpillar.  

          Where a good-faith uniformity challenge is made, the

taxing body must produce a justification for its classifications. 

The taxpayer then has the burden to persuade the court that the

taxing body's explanation is insufficient as a matter of law or

unsupported by the facts.  Geja's Cafe, 153 Ill. 2d at 248-49, 606

N.E.2d at 1216.  The Department's proffered justification here is

that a liquidating distribution is "essentially a forbidden

transaction," that "Illinois no longer permits liquidating

dividends or any other reduction of paid-in capital unaccompanied

by the redemption of shares."  

          Liquidating distributions are certainly legal in Illi-

nois.  Section 9.10 of the 1983 Business Act specifically allows

any distributions to shareholders, so long as those distributions

do not violate the corporation's articles of incorporation, render

the corporation insolvent, reduce the corporation's net assets

below zero, or affect the rights of preferred shareholders.  Ill.

Rev. Stat. 1985, ch. 32, par. 9.10.  Sections 9.15(a) and (c) of

the 1983 Business Act allowed paid-in capital to be reduced by

liquidating dividends "as permitted by law" (the limitations found

in section 9.10).  Ill. Rev. Stat. 1985, ch. 32, par 9.15(a), (c). 

Section 9.15 of the 1983 Business Act was repealed in 1987 (Pub.

Act 84-1412, art. 14, §2, eff. January 1, 1987 (1986 Ill. Laws

3470, 3510)), but section 9.10 remains intact.  Under current law

liquidating distributions can be made in Illinois, they just do not

reduce paid-in capital.    

          The 1983 Business Act made major changes in Illinois law. 

The 1983 Business Act abandoned the idea that creditors and pre-

ferred shareholders could be protected by forcing the corporation

to retain assets in the form of "stated capital" and "paid-in

surplus."  2 Ill. Bus. Corp. Act Ann., app. F, §1.80(j), at 372 (3d

ed. Supp. 1984).  Even before the 1983 Business Act, that protec-

tion could be avoided by the authorization of shares with a nominal

par value or without par value, and by other shareholder action. 

The 1983 Business Act cut the heart out of the franchise tax.  The

franchise tax was based on the level of corporate capital, and once

there was no statutory requirement that capital accounts be

maintained there was nothing to prevent reduction of paid-in capi-

tal to the minimum level.  The only reason corporate capital was

important, after the 1983 Business Act, was in computing the

franchise tax and license fee.  J. Van Vliet, The New Illinois

Business Corporation Act Needs More Work, 61 Chi.-Kent L. Rev., 42

(1985).  

          In 1987, the legislature responded to protect the

franchise tax.  The response was not to repeal the 1983 Business

Act, or to ensure that corporate capital was held at certain

levels.  Instead the legislature repealed section 9.15 of the 1983

Business Act, which had provided that paid-in capital could be

reduced by liquidating distributions and other methods, and changed

the section 1.80(j) definition of paid-in capital to state that

reductions could only be "effected by an acquisition of its own

shares."  Pub. Act 84-1412, art. 14, §1, eff. January 1, 1987 (1986

Ill. Laws 3470, 3501).  The 1987 amendments addressed form and not

substance.  Paid-in capital could be reduced, just not by liqui-

dating distributions.  The 1987 amendments attempted to slow

corporate reductions of paid-in capital, not by requiring that

paid-in capital be maintained at some level, but by placing impedi-

ments in the way of reduction.  (Distributions accompanied by the

acquisition and transfer of stock are more difficult than other

distributions, especially if the company is widely held.)  The 1987

amendment also appears to be a trap for the unwary.  

          Always before, the statute had been concerned with sub-

stance, the level of capital in the corporation.  Reductions could

be made by any method, so long as they were "effected in a manner

permitted by law" (Ill. Rev. Stat. 1981, ch. 32, pars. 157.2-11,

157.2-12) that is, so long as a certain level was maintained.  For

the first time in 1987, the concern was with the form of the

transaction, not with the level of remaining capital. 

          "[T]he classification must be based on a real and

substantial difference between the people taxed and those not

taxed."  (Emphasis in original.)  Searle, 117 Ill. 2d at 468, 512

N.E.2d at 1246.  There is no difference as far as corporate capital

is concerned between a corporation which passes out capital through

a liquidating distribution and one which does so through a distri-

bution accompanied by the acquisition and cancellation of stock. 

Both distributions are legal in Illinois, and both reduce the level

of capital in the corporation.  The only difference between the two

forms of distribution is in tax consequences.  The Department's

argument is that liquidating distributions result in taxation,

while distributions in connection with acquisition and cancellation

do not, because the statute says so.  That is not sufficient

justification under the uniformity clause.  Disparity in tax treat-

ment may not be justified simply because it generates state income. 

Searle, 117 Ill. 2d at 477-78, 512 N.E.2d at 1250.  

          The majority argues that the concept of paid-in capital

may have some significance in regard to protection of shareholders

or creditors.  That is not correct.  The $262,500,000 in this case

is out of the corporation.  Those funds are no longer available to

Venture's shareholders or creditors, and there is no cause of

action for their removal, because those funds were legally

distributed.  The fact that for Illinois franchise tax purposes

Venture's paid-in capital is considered to be $319,029,539 provides

no protection for anyone. 

          The Department's argument that Illinois is not "obligated

to arrange its corporate law, and its franchise tax in particular,

to conform to the law in other jurisdictions," is off the mark. 

Illinois corporations, as well as Delaware corporations, are

allowed to make liquidating distributions.  The refusal to allow

Illinois corporations to reduce paid-in capital unless that

reduction is accomplished by a distribution accompanied by

acquisition and cancellation of shares violates the uniformity

clause.  Venture's argument is not based on its status as a foreign

corporation.