JUDITH A. GAUTHIER, Plaintiff-Appellant and Cross-Appellee, v. CHARLES H.P. WESTFALL *et al.*, Defendants-Appellees and Cross-Appellants.

Second District   No. 2—93—0643

Opinion filed September 2, 1994.

Richard T. Ryan and Mark F. Smolens, both of Flynn, Murphy & Ryan, of Chicago, for appellant.

Robert A. Strelecky and Mary Elisabeth Ruether, both of Wildman, Harrold, Allen & Dixon, of Chicago, for appellees.

JUSTICE QUETSCH delivered the opinion of the court:

Plaintiff, Judith A. Gauthier, appeals from the entry of summary judgment in favor of defendants, Dr. Charles H. P. Westfall and the Elmhurst Clinic, in her action seeking recovery under a theory of medical malpractice, and from a ruling barring one of her proposed expert witnesses pursuant to Supreme Court Rule 220(b) (134 Ill. 2d R. 220(b)).

We briefly summarize the facts of the case at this point and will supply additional detail as we discuss the issues. In her complaint, plaintiff alleged that in November 1985 Dr. Westfall failed to diagnose and treat plaintiff in accordance with the proper standard of care after having received a copy of a report of a mammogram performed on plaintiff. Although not stated in the complaint, the record reveals that in April 1987 plaintiff was diagnosed with a malignancy of the left breast and underwent a radical mastectomy. Plaintiff filed her complaint on October 30, 1987. Discovery conducted

in the case included depositions of plaintiff's expert witness, Alan Pinshaw, M.D. (an obstetrician/ gynecologist), one of plaintiff's treating physicians, Dr. Donald Sweet (an oncologist), defendants' expert witness, Myles P. Cunningham, M.D. (a surgical oncologist), and defendant Westfall.

Plaintiff's expert, Dr. Pinshaw, testified that when retained by plaintiff's counsel, he had indicated that he was only prepared to offer an opinion on the standard of care. He testified that the mammogram report that Dr. Westfall reviewed "uses specific language raising the possibility of this patient having a breast malignancy." In Dr. Pinshaw's opinion, when Dr. Westfall received the mammogram report, the standard of care required that Dr. Westfall fully apprise plaintiff of the possibility of a malignancy and that a biopsy was mandated under the circumstances.

Based on his review of various medical records, including defendant Westfall's treatment records, defendants' expert, Dr. Cunningham, rendered the opinion that the proper standard of care required that Dr. Westfall advise plaintiff of the possibility of a malignancy and recommend a follow-up examination such as further mammography at appropriate intervals. However, Dr. Cunningham testified that the standard of care did not require that a biopsy be performed. Dr. Cunningham also testified that he "could not identify *** that Mrs. Gauthier had suffered any damages relative to Dr. Westfall's participation in her care." Dr. Cunningham explained as follows:

> "My understanding is that the patient is alive, well, and healthy, without any evidence of cancer as of today; that if she had a cancer in 1985, it is impossible to prove or to recognize other than by intuition, which is wholly unsatisfactory, that she suffered by a delay in diagnosis of some eighteen months.
>
> The treatment would not necessarily have been any different. She had options for treatment in *** 1987; and had she had a breast cancer in 1985, in all probability the same options would have been offered.
>
> * * *
>
> So that the probability is there would have been no difference in treatment.
>
> There is no evidence that she has suffered any damage if the diagnosis were in fact delayed by eighteen months."

Dr. Sweet, one of plaintiff's treating physicians, testified that he first examined plaintiff in June 1988. A consultation note he prepared at that time indicated that there was a 20% to 30% of a recurrence of cancer. Dr. Sweet testified that he had most recently examined plaintiff in June 1990. Based on studies that had been

released after he initially examined plaintiff in 1988, Dr. Sweet concluded that the risk of recurrence was approximately 2% to 4%. Dr. Sweet testified that plaintiff's present prognosis was excellent and that, based on data published after plaintiff's initial examination, her chances of survival were in excess of 90%.

Defendants moved for summary judgment on the basis that plaintiff's sole expert witness was unable to offer an opinion whether Dr. Westfall's alleged negligence proximately caused any injury, whereas defendants' expert witness had opined that it could not be established any delay in properly diagnosing plaintiff's condition caused any injury. After defendants filed their summary judgment motion, plaintiff moved to identify an additional expert witness, Dr. James Vogel. The trial court denied the motion and subsequently granted defendants' motion for summary judgment on March 8, 1991.

Before we may proceed to the merits, we must confront an unusual question concerning appellate jurisdiction. On March 8, 1991, after the trial court entered its summary judgment order, defendants filed a motion which included a request for sanctions pursuant to Supreme Court Rule 137 (Official Reports Advance Sheet No. 26 (December 22, 1993), R. 137, eff. February 1, 1994). Before the request for sanctions was ruled upon, plaintiff filed a notice of appeal from the entry of summary judgment.

In an unpublished order under Supreme Court Rule 23 (Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23, eff. July 1, 1994) we determined, based on *Marsh v. Evangelical Covenant Church* (1990), 138 Ill. 2d 458, that because defendant's request for sanctions pursuant to Rule 137 was apparently still pending, an appeal from the order granting summary judgment was premature in the absence of a finding by the trial court of no just reason to delay enforcement or appeal of the judgment. (*Gauthier v. Westfall* (2d Dist. 1992), No. 2—91—0385 (unpublished order under Supreme Court Rule 23).) Our Rule 23 order stated that the appeal was dismissed. On March 9, 1992, the mandate of this court was filed in the circuit court. The mandate stated: "in accordance with the attached Decision *the judgment of the trial court* is dismissed." (Emphasis added.)

Thereafter, plaintiff filed a new jury demand and her attorney filed a new appearance. The case was assigned a new case number in the trial court and was assigned to Judge Robert K. Kilander. Judge William E. Black had previously presided over the case. Judge Black was assigned to rule on defendants' request for sanctions. Plaintiff took the position that the case proceeding under a new case number was itself a new case and asserted the right to respond to defendants' motion for summary judgment in the "newly filed case." Plaintiff

noted that after our mandate was issued, defendants served her with a notice of the March 8, 1991, motion which also included a request that the court "grant hearing instanter on these defendants' previously filed motion for summary judgment." Plaintiff requested an opportunity to respond to the summary judgment motion.

On the other hand, defendants asserted that summary judgment had already been entered in their favor and that their request for sanctions was all that remained pending after the "dismissal" of plaintiff's premature appeal. Defendants noted that this court's mandate stated that the "judgment of the trial court" was dismissed. However, defendants argued that the language was "an obvious 'typo,' " and that plaintiff was not entitled to relitigate defendants' summary judgment motion.

On June 29, 1992, Judge Black denied defendants' request for Rule 137 sanctions. Prior to that date, however, Judge Kilander had set the case for status on July 29, 1992. On that date a status hearing was held which only plaintiff's attorney attended. Plaintiff's attorney indicated that defendants had requested a hearing on their summary judgment motion. On plaintiff's request, Judge Kilander entered an order establishing a briefing schedule on defendants' summary judgment motion. Defendants subsequently filed a motion to vacate the briefing schedule, asserting that there was no basis for revisiting the summary judgment ruling. On April 29, 1993, Judge Kilander entered an order vacating the briefing schedule and providing that "the order of [March 8, 1991], granting defendant [sic] summary judgment is final and appealable as of today's date." Plaintiff filed her notice of appeal on May 28. Defendants cross-appeal from the portion of the order purporting to make the summary judgment appealable as of April 29, 1993.

Defendants contend that we lack jurisdiction and this appeal must be dismissed. They argue that after our dismissal of plaintiff's premature appeal from the summary judgment order all that remained pending in the trial court was their request for Rule 137 sanctions, and plaintiff was required to file a notice of appeal within 30 days after the request for sanctions was disposed of on June 29, 1992. Defendants argue that the superfluous briefing schedule ordered by Judge Kilander could not toll the period within which plaintiff was required to file her notice of appeal, and plaintiff's notice of appeal filed more than 30 days after June 29, 1992, was untimely.

Plaintiff argues, on the other hand, that this court's mandate did not state that the "appeal" was dismissed; it stated that "the judgment of the trial court is dismissed." We agree with defendants that it is readily apparent that during the preparation of the mandate

the words "judgment of the trial court" were inadvertently substituted for the word "appeal." Unfortunately, although during the proceedings below defendants noted the "obvious 'typo,'" they took no action to secure the issuance of a corrected mandate. It is perhaps a high tribute to mandate drafters that we find scant authority on the consequences of such a mistake in a reviewing court mandate. However, in *Fisher v. Burks* (1918), 285 Ill. 290, the court stated:

> "The mandate is the judgment of this court transmitted to the circuit court. Where the direction contained in it is precise and unambiguous, it is the duty of the trial court to carry it into execution and not look elsewhere for authority to change its meaning or direction. [Citations.] *It is the mandate of the court of review, and not its opinion, that governs, when the mandate differs from the opinion or is specific and plain in its terms.* \*\*\* If the mandate was not in accordance with the judgment of this court it was up to the plaintiff in error to show by the judgment of this court that it was erroneous *and to have a proper mandate issued, as the lower court could not take judicial notice of the judgment of this court.*" (Emphasis added.) 285 Ill. at 293-94.

■ Here the mandate clearly differs from the Rule 23 order, and thus the mandate governs. In accordance with *Fisher*, it was incumbent upon defendants to have a proper mandate issued by this court. The error in the mandate here is obvious, but we are loath to set a precedent inviting trial courts to determine when a purported error in a reviewing court mandate is sufficiently obvious that the mandate may be disregarded. In any case where an error is suspected, the more expedient course is to bring it to the attention of the court that issued the mandate. Had defendants done so in this case much confusion might have been avoided.

Defendants also argue that the meaning of the mandate is unclear, and we may look to the Rule 23 order to determine its meaning. It is true that the phrase "the judgment of the trial court is dismissed" is not "precise and unambiguous." (*Fisher*, 285 Ill. at 293-94; see also *City of Springfield v. Allphin* (1980), 82 Ill. 2d 571, 574.) However, resort to the Rule 23 order to learn the meaning of the phrase would be a futile exercise. It is pointless to ask what meaning we intended in using the phrase "the judgment of the trial court is dismissed" since we simply did not intend to use that phrase. No principle of construction permits us to interpret "judgment of the trial court" to mean "appeal."

We are left with the unenviable task of determining what effect to give the statement "the judgment of the trial court is dismissed." Plaintiff's apparent position is that in this context "dismissed" is

equivalent to "reversed" or "vacated." Strictly speaking this is not so. "As a matter of general definition, a dismissal is an order for the termination *of a case* without a trial of any of its issues." (Emphasis added.) (24 Am. Jur. 2d *Dismissal, Discontinuance, & Nonsuit* § 1 (1983).) Thus, it really does not make sense to speak of dismissal *of a judgment,* and we are not aware of any instances where that phrase has been used intentionally.

Even so, the use of the word "dismissed" in the mandate at least has the flavor of somehow abrogating the judgment of the trial court. We are not inclined to strain to find a meaning for language that was simply used by mistake and apparently has no recognized meaning. With no other guide, we think the mandate should be given an effect that leads to a just result under the circumstances of the case. It is apparent that the mistake in the mandate caused confusion, and we think it would be unjust to give the mandate an effect that would cause plaintiff to forfeit the right to appeal. Judge Kilander's order of April 29, 1993, in effect "reinstated" the summary judgment. We conclude that this is the appropriate point from which to measure the time for filing the notice of appeal. Accordingly, we consider plaintiff's notice of appeal to be timely.

We now turn to the question of whether the trial court erred in entering summary judgment in favor of defendants. Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (735 ILCS 5/2—1005(c) (West 1992); *Gilbert v. Sycamore Municipal Hospital* (1993), 156 Ill. 2d 511, 517-18.) Summary judgment should not be granted unless the right of the moving party is clear and free from doubt. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240; *John Alden Life Insurance Co. v. Propp* (1994), 255 Ill. App. 3d 1005, 1008.) Even so, while the nonmoving party in a summary judgment motion is not required to prove his case, he must nonetheless present a factual basis which would arguably entitle him to a judgment. (*Propp,* 255 Ill. App. 3d at 1009; *Olympic Restaurant Corp. v. Bank of Wheaton* (1993), 251 Ill. App. 3d 594, 603; see also *Payne v. Mroz* (1994), 259 Ill. App. 3d 399, 403.) In ruling on a motion for summary judgment, the pleadings, depositions, admissions, exhibits, and affidavits should be construed strictly against the movant and liberally in favor of the respondent. (*Pyne v. Witmer* (1989), 129 Ill. 2d 351, 358.) But "[i]f what is contained in the papers on file would constitute all of the evidence before a court and would be insufficient to go to a jury but would require a court to direct a verdict, summary judgment should be entered."

(*Pyne*, 129 Ill. 2d at 358; see also *Payne v. Mroz* (1994), 259 Ill. App. 3d 399, 403.) If from the papers on file, a plaintiff fails to establish an element of his cause of action, summary judgment for the defendant is proper. *Pyne*, 129 Ill. 2d at 358; *Town of Avon v. Geary* (1991), 223 Ill. App. 3d 294, 298.

■ In an action for medical malpractice, the plaintiff must prove the proper standard of care by which to measure the defendant practitioner's conduct, a negligent breach of that standard, and a resulting injury proximately caused by the practitioner's lack of skill or care. (*Rosenberg v. Miller* (1993), 247 Ill. App. 3d 1023, 1028.) We agree with defendants that summary judgment was properly entered in their favor. Defendants moved for summary judgment on the basis that, even if Dr. Westfall had acted negligently in his care of plaintiff, the record provided no basis upon which a jury could conclude that such negligence proximately caused any injury. Plaintiff's only disclosed expert rendered an opinion on the appropriate standard of care in a situation of this type, but offered no opinion on whether a deviation from that standard of care caused any injury in this case. Plaintiff has asserted two theories of injury resulting from Dr. Westfall's alleged negligence: first, that if Dr. Westfall had acted in accordance with the proper standard of care her treatment would not have required a radical mastectomy, and, second, that earlier treatment would have improved her chances for full recovery. In her appellate brief, plaintiff argues in a wholly conclusory manner that there is evidence in the record supporting these theories, but she fails specifically to identify any such evidence, nor do we find the evidence in the record. On the other hand, defendants' expert, Dr. Cunningham, expressed the general opinion even if Dr. Westfall had acted negligently, he could not identify any injury resulting from Dr. Westfall's participation in her care. Of particular relevance to plaintiff's first theory of injury, Dr. Cunningham opined that if plaintiff had been diagnosed with breast cancer in 1985 her treatment options would have been no different than they were in 1987 when the diagnosis was made. At the very least, Dr. Cunningham's testimony, considered in its entirety, substantially refutes plaintiff's allegation of injury. But, again, the dispositive point is not the sufficiency of defendants' evidence to refute the allegations of causation and injury, but plaintiff's utter failure to bring forth any evidence whatsoever in support of an essential element of her cause of action.

Plaintiff contends that summary judgment was improper because she was not required to establish causation and injury through expert testimony. We disagree. We fail to see how else plaintiff could establish what her treatment options would have been and how her

prognosis would have been affected by an earlier diagnosis. Clearly, a lay witness would not be competent to testify about these matters, and a jury would not be equipped to draw any conclusions about the effect of a delay in diagnosis without the assistance of expert testimony. Several decisions cited by defendants illustrate the need for expert testimony to establish causation in medical malpractice cases. See *Saxton v. Toole* (1992), 240 Ill. App. 3d 204, 210; *Pumala v. Sipos* (1987), 163 Ill. App. 3d 1093, 1098-99; *Eberle v. Brenner* (1985), 131 Ill. App. 3d 394, 396-98.

Plaintiff also argues that the deposition testimony in December 1990 of her treating physician, Donald L. Sweet, and a "consultation note" authored by Dr. Sweet in June 1988 created a material question of fact precluding summary judgment. At his 1990 deposition, Dr. Sweet testified that plaintiff's chances of surviving the lesion were in excess of 90%. In his 1988 consultation note, Dr. Sweet indicated that plaintiff "has a 20-30% chance of recurring." Plaintiff contends that "this variance in testimony from Dr. Sweet created a genuine issue of material fact as to whether the 'delay' in diagnosis of [plaintiff's] left breast carcinoma proximately caused her to suffer an increased possibility of reoccurrence." We find no merit to plaintiff's argument that the prognosis reflected in Dr. Sweet's consultation note somehow impeaches the opinion Dr. Sweet rendered at his deposition approximately 2 1/2 years later. As defendants note, the more favorable prognosis in 1990 apparently reflects Dr. Sweet's consideration of studies of breast cancer survival rates published after the initial prognosis. In any event, we are simply unable to discern how Dr. Sweet's statements are germane to the issues of causation and injury. The statements reflect Dr. Sweet's opinion of plaintiff's prognosis at one point in time and an apparently more favorable prognosis about 2 1/2 years later; they do not appear to speak in any manner to the issue of whether or how plaintiff's chances of recovery were affected by a delay in a definitive diagnosis of a breast malignancy.

As it stands, the record is devoid of any evidence supporting plaintiff's theories of injury, and the deposition testimony of defendants' expert witness that plaintiff suffered no injury as a result of delay in diagnosis stands uncontradicted. Accordingly, based on the record before the trial court, defendants were entitled to judgment in their favor, and the trial court properly granted their motion for summary judgment.

We finally consider whether the trial court erred in barring plaintiff from identifying an additional expert pursuant to Supreme Court Rule 220 (134 Ill. 2d R. 220). Although we have found that

summary judgment was properly entered on the record before the trial court, it is plaintiff's position that the proposed expert could have supplied a factual basis with respect to causation and injury, thereby precluding summary judgment.

The procedural background germane to this issue is as follows. The first Rule 220 discovery order in this case was entered on April 24, 1989. It required plaintiff to disclose her expert witnesses by July 1, 1989, and defendants to disclose their expert witnesses by August 1, 1989. On August 29, 1989, plaintiff moved to amend the discovery schedule. That same day, the trial court entered an amended Rule 220 discovery order requiring disclosure by plaintiff by September 1, 1989, and disclosure by defendants by October 1, 1989. In her brief, plaintiff represents that she disclosed Dr. Alan Pinshaw as an expert witness by letter to defense counsel on August 24, 1989. However, plaintiff has failed to provide a reference to the record substantiating that Dr. Pinshaw was disclosed on that date. Defendants took Dr. Pinshaw's deposition on June 8, 1990.

On August 10, 1990, defendants filed a motion seeking to close discovery and set a trial date. In the motion defendants represented that the deposition of plaintiff's sole disclosed expert witness, Dr. Pinshaw, had been taken, and that defendants stood ready to present their expert witness, Dr. Myles Cunningham, for a deposition at plaintiff's request. Nothing in the record indicates that plaintiff opposed this motion, and on August 28 the trial court entered an order granting plaintiff 60 days to identify any additional experts and make them available for deposition. The trial court also set the matter for trial on February 4, 1991. On December 12, 1990, defendants took the deposition of one of plaintiff's treating physicians, Dr. Donald Sweet. On January 4, 1991, defendants filed their motion for summary judgment. On January 15, the trial court entered an order striking the February 4 trial date on the basis that plaintiff's attorney had a trial in Federal court scheduled to begin the same day. It was later established, however, that the Federal court trial was actually scheduled to begin on February 5, and the trial of plaintiff's case would have taken precedence.

On January 16, plaintiff filed a motion to identify an additional expert witness, Dr. James M. Vogel, to testify "on damages." Plaintiff indicated that Dr. Vogel's testimony was necessary to respond to evidence that had developed during Dr. Sweet's deposition. The motion represented that Dr. Vogel would testify that "the percentage of curability following the April 1987 biopsy was about 70 to 75 percent, whereas the studies have shown that treatment immediately after identification of the minimal disease on mammography results in a

survival rate of 90 to 95 percent." On February 5, the trial court denied plaintiff's motion and barred any experts not properly disclosed from testifying or otherwise furnishing evidence.

Rule 220(b) provides, in pertinent part:

"[T]he trial court *** shall enter an order scheduling the dates upon which all expert witnesses *** shall be disclosed. *** All dates set by the trial court shall be chosen to insure that discovery will be completed not later than 60 days before the date on which the trial court reasonably anticipates the trial will commence. *** Failure to make the disclosure required by this rule or to comply with the discovery contemplated herein will result in disqualification of the expert as a witness." (134 Ill. 2d R. 220(b).)

Plaintiff does not dispute that she failed to disclose Dr. Vogel in accordance with Rule 220. She complains, however, that barring Dr. Vogel from offering evidence was an unduly harsh sanction and constituted an abuse of discretion.

In its recent decision in *Sohaey v. Van Cura* (1994), 158 Ill. 2d 375, our supreme court observed:

"Rule 220 was adopted with the hopes of eliminating situations where either an expert's late or surprise testimony is permitted to the opponent's prejudice, the opinions are refused to the detriment of the offering party, the trials are continued, or the allowance or denial of the testimony produces reversible error and the cause must be retried. [Citation.] 'Rule 220 attempts to eliminate these evils by establishing a uniform, *but not inflexible*, framework for the timely revelation of the identity of expert witnesses and the subject matter of their testimony.' (Emphasis added.) [Citation.] Reading the rule in the context in which it was written, it is clear that the trial court must retain its discretion in formulating a sanction for technical violations of the rule. Indeed, if Rule 220 did eliminate the trial judge's discretion, the rule itself would generate the very evils that it was formulated to eliminate." *Sohaey*, 158 Ill. 2d at 381-82.

Because the decision regarding the propriety of sanctions under Rule 220 is committed to the discretion of the trial court, we will not disturb the trial court's decision absent an abuse of that discretion. It is true that "[t]he purpose of a sanction for a violation of Rule 220 is not to punish but to insure fair discovery and a trial on the merits." (*Vallejo v. Mercado* (1991), 220 Ill. App. 3d 1, 8.) At the same time, the exclusion of experts has been upheld though the plaintiff was thereby prevented from establishing a necessary element of his or her cause of action. See, *e.g.*, *Barth v. Reagan* (1990), 139 Ill. 2d 399 (trial court did not err in barring testimony of plaintiff's expert witness on the standard of care in a legal malpractice action and defendant was entitled to a directed verdict).

In our decision in *Sohaey* (*Sohaey v. Van Cura* (1992), 240 Ill. App. 3d 266, *aff'd* (1994), 158 Ill. 2d 375) we discussed the following factors which are relevant to the trial court's determination as to Rule 220 sanctions: (1) the surprise to the adverse party; (2) the prejudicial effect of the expert's testimony; (3) the nature of the expert's testimony; (4) the diligence of the adverse party; (5) whether the objection to the expert's testimony was timely; and (6) the good faith of the party calling the witness. *Sohaey*, 240 Ill. App. 3d at 286.

■ We need not discuss every factor individually. It is sufficient to note that consideration of these factors does not unequivocally favor plaintiff such that we could conclude that the trial court abused its discretion in ruling in defendants' favor. In particular, we note that permitting plaintiff to identify an additional witness could result in surprise and prejudice to defendants. It is true defendants were generally aware that plaintiff needed expert testimony to prove causation and injury. (See *Sohaey*, 158 Ill. 2d at 382.) However, we find nothing in the record showing that plaintiff had ever clearly disclosed the particular theory of injury about which the proposed additional expert, Dr. Vogel, would testify: that a delay in diagnosis had decreased plaintiff's chance of survival. In her complaint, plaintiff identified her injuries as follows:

> "[P]laintiff was *** injured both internally and externally; *** she sustained severe and permanent injuries; *** plaintiff sustained severe shock and bodily damage; *** she was required to undergo painful, serious major surgery including a mastectomy, *** [plaintiff] has had to undergo painful, debilitating treatments because of the spread of cancer; *** she has suffered and continues to suffer acute and prolonged physical and mental pain and suffering; *** she became monetarily liable for medical and hospital care and treatment as well as incurring other expenses."

Under these circumstances, it is not so clear that defendants could have anticipated the nature of Dr. Vogel's testimony. We conclude that Dr. Vogel's testimony could have caused surprise, and his last-minute disclosure could have engendered prejudice to defendants. We also find no indication of a lack of diligence on defendants' part. Nor are defendants guilty of an untimely objection; plaintiff's request to identify Dr. Vogel as an expert was ruled upon promptly.

In addition to the factors identified above, in *Sohaey*, we noted that other primary factors in determining the severity of Rule 220 sanctions include whether the party proffering the expert provided an explanation for the delay, and whether the party requested a continuance for additional time to conduct discovery. (*Sohaey*, 240 Ill.

App. 3d at 287.) Here, plaintiff requested a continuance on the basis that plaintiff's attorney had another trial scheduled, although the trial court ultimately concluded that the trial of the case at bar would have taken precedence. Plaintiff did not request a continuance for purposes of additional discovery.

Plaintiff's ostensible excuse for not identifying Dr. Vogel earlier was that Dr. Vogel's testimony only became necessary in light of Dr. Sweet's deposition testimony. However, since plaintiff bore the burden of proof of an injury proximately caused by Dr. Westfall's alleged negligence, she was required to introduce evidence on that element in order to establish a *prima facie* case. Such evidence was necessary irrespective of whatever evidence defendants might offer, and plaintiff's failure to obtain it must be attributed either to inattention to the case or a lack of merit, as a matter of medical science, to her theory of injury.

Plaintiff also argues that the trial court's decision was influenced by a misunderstanding of the progress of discovery in the case. Plaintiff notes that the trial court stated that "plaintiff has failed to comply with two prior court orders." Plaintiff assumes that the trial court was alluding to the disclosure of plaintiff's standard of care expert, Dr. Pinshaw. Plaintiff contends that Dr. Pinshaw was timely disclosed, although the record is not altogether clear on that point. It is just as likely, however, that the trial court was simply referring to the fact that plaintiff had failed to disclose an "injury" expert before the original deadline for disclosure and extensions as ordered by the trial court.

Plaintiff also argues that the failure to disclose Dr. Vogel earlier reflects the difficulties medical malpractice plaintiffs face in finding experts willing to testify against their colleagues. We find this explanation unpersuasive, since it does not appear that plaintiff ever informed the trial court that she was encountering such difficulties and did not oppose the trial court order closing Rule 220 discovery and setting a trial date. Accordingly, the trial court did not abuse its discretion in barring Dr. Vogel from testifying or otherwise offering evidence.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

McLAREN and DOYLE, JJ., concur.