VENTURE STORES, INC., Plaintiff-Appellant, v. GEORGE RYAN, as Secretary of State, *et al.*, Defendants-Appellees.

Fourth District   No. 4—96—0217

Argued December 18, 1996.—Opinion filed February 25, 1997.

COOK, J., dissenting.

Richard A. Hanson (argued), of McDermott, Will & Emery, of Chicago, for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and A. Benjamin Goldgar (argued), Assistant Attorney General, of counsel), for appellees.

JUSTICE GREEN delivered the opinion of the court:

This case concerns the question of whether the format for

determining the annual franchise taxes of foreign corporations doing business in Illinois, as provided for by section 15.65(d) of the Business Corporation Act of 1983 (Business Act) (Ill. Rev. Stat. 1989, ch. 32, par. 15.65(d)), at times pertinent, violated the uniformity clause set forth in section 2 of article IX of the Illinois Constitution of 1970, which states:

> "In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly. Exemptions, deductions, credits, refunds and other allowances shall be reasonable." Ill. Const. 1970, art. IX, § 2.

■ At all times pertinent, (1) section 15.70 of the Business Act provided that the annual franchise tax upon foreign corporations doing business in the state be based upon that corporation's "paid-in capital" (Ill. Rev. Stat. 1989, ch. 32, par. 15.70)), and (2) section 1.80(j) of the Business Act stated, "paid-in capital of a foreign corporation shall be determined on the same basis and in the same manner as paid-in capital of a domestic corporation, for the purpose of computing *** franchise taxes" (Ill. Rev. Stat. 1989, ch. 32, par. 1.80(j)). Section 1.80(j) also stated:

> " 'Paid-in capital' means the sum of the cash and other consideration received, less expenses, including commissions, paid or incurred by the corporation, in connection with the issuance of shares, plus any cash and other consideration contributed to the corporation by or on behalf of its shareholders, plus amounts added or transferred to paid-in capital by action of the board of directors or shareholders pursuant to a share dividend, share split, or otherwise, *minus reductions from that sum effected by an acquisition of its own shares, to the extent of the amount of paid-in capital represented by such acquired shares.*" (Emphasis added.) Ill. Rev. Stat. 1989, ch. 32, par. 1.80(j).

The record shows that plaintiff, Venture Stores, Inc. (Venture), is a Delaware corporation which, consistent with the laws of that state, reduced its capitalization by the distribution to its sole shareholder, May Department Stores, Inc. (May), of $262,500,000. Venture maintains that the foregoing format to determine the basis for franchise taxes violates the uniformity clause because the tax scheme unreasonably prevents corporations such as it from reducing the basis for the franchise tax by this kind of capital reduction, while corporations that do so by buying in their own shares are permitted to reduce that basis. Venture contends that the resulting classification is unreasonable within the meaning of the uniformity clause. We disagree.

In October 1992, Venture reported a reduction in paid-in capital

in the amount of the capital distribution to the office of defendant, the Secretary of State (Secretary), and attempted to pay its 1993 franchise tax based upon its paid-in capital reduced by the amount of the distribution. Following the express terms of the statutory format, the Secretary's office refused to reduce Venture's paid-in capital and refused to accept the payment as being in full for the franchise tax. Pursuant to section 2a of the State Officers and Employees Money Disposition Act (Money Act) (30 ILCS 230/2a (West 1992)), on January 11, 1993, Venture paid its 1993 franchise tax under protest. The tax paid was based on paid-in capital without a reduction for the capital distribution. Subsequently, Venture also paid its 1994 and 1995 franchise taxes under protest based upon no reduction in the paid-in capital basis. In March 1993 it also filed a petition with the Secretary for a refund of portions of its 1990, 1991, and 1992 franchise taxes which had been based upon paid-in capital that had no reduction for the capital distribution.

Acting pursuant to section 2a of the Money Act, on February 8, 1993, Venture filed a three-count complaint in the circuit court of Sangamon County. The only count before us is count II, which charged that the statutory format applied by the Secretary in assessing annual franchise tax fees violated the uniformity clause. The Secretary, the State Treasurer, and the Illinois Department of Business Services (Department) were joined as defendants. Distribution of the money by the State Treasurer was temporarily enjoined. Both sides requested summary judgments. On June 22, 1995, the circuit court entered summary judgment as to count II in favor of defendants and denied Venture's request for summary judgment. That judgment is now final as to all claims and parties, and Venture has appealed. We affirm.

■ The uniformity clause case most analogous to the instant case is *Searle Pharmaceuticals, Inc. v. Department of Revenue*, 117 Ill. 2d 454, 512 N.E.2d 1240 (1987). There, the supreme court held that section 203(e)(2)(E) of the Illinois Income Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 2—203(e)(2)(E)) violated the uniformity clause when it allowed corporate taxpayers, in an affiliated group of corporations which had not elected to file a federal consolidated income tax return, to carry their net operating losses back to arrive at their state base income, while those corporations in an affiliated group which had elected to file a consolidated federal return were required to carry their net operating losses forward. At issue was the disparity in tax treatment between two classes of otherwise identically situated corporations of an affiliated group—one class electing to file a consolidated return, the other class not electing to file a consolidated

return. The *Searle* court articulated the test to determine whether taxpayer classifications met the requirements of the uniformity clause as follows:

"[T]he classification must be based on *a real and substantial difference between the people taxed and those not taxed, and that the classification must bear some reasonable relationship to the object of the legislation or to public policy.*" (Emphasis in original.) *Searle*, 117 Ill. 2d at 468, 512 N.E.2d at 1246.

The *Searle* court rejected the Department of Revenue's justification for the disparity in tax treatment, that being to (1) clarify an ambiguity, (2) further administrative convenience and budgeting concerns, and (3) generate state income. The court held the Department could not maximize the state income in an arbitrary and capricious manner by classifying corporate taxpayers where there was "no real and substantial difference between these two classes rationally related to this stated objective." *Searle*, 117 Ill. 2d at 478, 512 N.E.2d at 1250.

The posture of a taxpayer such as Venture and that of the state, in a proceeding where the taxpayer challenges a tax on the basis of a claimed violation of the uniformity clause, is explained in *Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority*, 172 Ill. 2d 243, 665 N.E.2d 1246 (1996), and *Geja's Cafe v. Metropolitan Pier & Exposition Authority*, 153 Ill. 2d 239, 606 N.E.2d 1212 (1992). Both cases involved uniformity clause challenges to nonproperty taxes imposed by the Metropolitan Pier and Exposition Authority based upon the proximity of the taxpayer's property to the McCormick Place exposition building.

■ In *Geja's Cafe*, the supreme court stated:

"[W]e preface this discussion by noting the relatively narrow scope of the court's inquiry when a tax has been challenged on uniformity grounds. Statutes are presumed constitutional, and broad latitude is afforded to legislative classifications for taxing purposes. A plaintiff challenging such a classification has the burden of showing that it is arbitrary or unreasonable; if a state of facts can be reasonably conceived that would sustain it, the classification must be upheld. *Illinois Gasoline Dealers Association v. City of Chicago* (1988), 119 Ill. 2d 391, 403.

We also note that the burdens placed on each party by *Illinois Gasoline*, in conjunction with *Searle*, may not be entirely clear, and we clarify them today. A plaintiff is not required to come forward with any and all conceivable explanations for the tax and then prove each one unreasonable; this was specifically rejected in *Searle*, 117 Ill. 2d at 468[, 512 N.E.2d at 1246]. Rather, these cases stand for the proposition that, upon a good-faith uniformity chal-

lenge, a taxing body must produce a justification for its classifications. *The plaintiff then has the burden to persuade the court that the defendant's explanation is insufficient as a matter of law, or unsupported by the facts, to satisfy the Searle test.* If the plaintiff is unable to do this, judgment is proper as a matter of law. As we shall see, plaintiffs fail to meet their burden of persuasion with any of their three challenges." (Emphasis added.) *Geja's Cafe*, 153 Ill. 2d at 248-49, 606 N.E.2d at 1216.

In *Allegro Services*, where both sides had also moved for summary judgment, the court stated:

"We also take note of the procedural posture of this case, which is before us on the trial court's ruling in favor of the Authority on the parties' cross-motions for summary judgment. Summary judgment is appropriate where 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' 735 ILCS 5/2— 1005(c) (West 1994); *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 517-18 (1993). The purpose of summary judgment is not to try a question of fact, but to determine whether one exists. *Gilbert*, 156 Ill. 2d at 517. Plaintiffs are not required to prove their case at the summary judgment stage. However, to survive a motion for summary judgment, the nonmoving party must present a factual basis which would arguably entitle him to a judgment. *E.g., Gauthier v. Westfall*, 266 Ill. App. 3d 213, 219 (1994). Accordingly, in the present case, to the extent the Authority has produced a legally sufficient justification for its tax classification, plaintiffs would then be required to present a factual basis negating the asserted justification to survive defendant's motion for summary judgment. Conversely, *if the Authority has failed to produce a legally sufficient justification for the classification, plaintiffs would be entitled to a judgment as a matter of law.*" (Emphasis added.) *Allegro Services*, 172 Ill. 2d at 255-56, 665 N.E.2d at 1254.

Defendants contend first that the statutory provisions at issue concern the internal organization and financing of a corporation doing business in Illinois and are not tax legislation subject to the uniformity clause. As far as foreign corporations such as Venture are concerned, defendants admit this is not so, as the laws of the state of their incorporation control their internal organization and financing, and the nature of "paid-in capital" is significant only for the purpose of determining the franchise tax for doing business in the state. However, defendants assert that the classification created for domestic corporations, if reasonable for internal control on domestic corporations, is reasonable to impose on foreign corporations to keep

foreign and domestic corporations on an equal basis for taxing their authorization to do business in Illinois.

Upon enactment of the Business Act, section 1.80(j) defined "paid-in capital" in the following manner:

" 'Paid-in capital' means the sum of the cash and other consideration received, less expenses, including commissions, paid or incurred by the corporation, in connection with the issuance of shares, plus any cash and other consideration contributed to the corporation by or on behalf of its shareholders or transferred to paid-in capital by action of the board of directors or shareholders, *less any distribution therefrom.*" (Emphasis added.) Ill. Rev. Stat. 1985, ch. 32, par. 1.80(j).

The official comments of the committee drafting the Business Act state with reference to section 1.80(j), as follows:

" 'Paid-in capital', a new term, is defined. 'Paid-in capital' is intended to be a substitute for the concepts of 'stated capital' and 'paid-in surplus' of the 1933 Act, reflecting a revision of the financial provisions and conforming to the proposed 1983 Revised Model Business Corporation Act. The drafters recognize that the principles once supporting the use of the terms 'par value', 'stated capital', and 'paid-in surplus' are no longer valid. Traditionally, those terms offered a form of protection and security to creditors and preferred shareholders. Today, provisions based on these terms are meaningless, if not misleading, because many corporations have authorized shares with a nominal par value or without par value. In addition, the elimination of 'stated capital' and 'paid-in surplus' is consistent with the provisions of [section 9.10 of the Business Act (Ill. Rev. Stat. 1985, ch. 32, par. 9.10)], the section governing all distributions under the 1983 Act, including dividends and redemptions. A distribution will be prohibited only if it would (a) render the corporation insolvent or (b) reduce the net assets to less than zero or less than the maximum amount payable to preferred shareholders in liquidation if the corporation were then liquidated. The limitation in [section 9.10] is expressed without the use of the terms 'stated capital' or 'paid-in surplus'; thus, no definition of these concepts is needed." C. Murdock, 2 Ill. Bus. Corp. Act Ann., app. F § 1.80(j), at 372 (3d ed. Supp. 1984).

Section 9.15(a)(3) of the Business Act originally permitted corporations to reduce paid-in capital through "distributions as liquidating dividends as permitted by law." Ill. Rev. Stat. 1985, ch. 32, par. 9.15(a)(3). At that time, section 9.10(c)(2) of the Business Act permitted liquidating dividends to be used by a corporation to reduce paid-in capital subject to certain restrictions, one of which was that the dividend did not leave the corporation insolvent or with liabilities

greater than assets. Ill. Rev. Stat. 1985, ch. 32, par. 9.10(c)(2). A summary of the Business Act compiled by a committee selected by the Secretary and which drafted the Business Act explained:

"A new section entitled 'Distributions to Shareholders' is the heart of the financial changes incorporated in the 1983 Act. [Ill. Rev. Stat. 1985, ch. 32, par. 9.10.] Both dividends and repurchase of shares are encompassed within the notion of 'distributions', and the Board now has general power to authorize any distribution, subject to any restriction in the Articles and also subject to the limitation that a distribution may not be made if, after giving it effect, either (a) the corporation would be insolvent or (b) the net assets of the corporation would be less than zero or less than the maximum amount payable upon shares having a preferential right upon liquidation.

Illinois has been an 'earned surplus' state; that is, dividends could be paid or shares repurchased only 'out of' earned surplus. Even in Illinois, dividends in partial liquidation or dividends upon preferred shares could be paid 'out of' paid-in surplus, and shares that were deemed 'redeemable' could be purchased without regard to earned surplus. Since the 1940's, many states have provided additional flexibility with respect to dividends and repurchase of shares by permitting such repurchases out of paid-in surplus as well as earned surplus. Thus, the only sacrosanct account was 'stated capital' but, since this was a function of the par value of the shares and the par could be reduced to a nominal amount, the protection afforded by providing that distributions could not be made out of stated capital was largely illusory. Accordingly, the 1933 Act has now been modified to delete reference to capital accounts as a control upon distributions and has instead adopted the approach now embodied in the new Model Act. [Ill. Rev. Stat. 1985, ch. 32, par. 9.10.]

Since 'par' and 'stated capital' tend to be misleading concepts, they have been deleted from the 1983 Act. Today the concept of par value is an anachronism. The 1983 Act also substitutes the concept of 'paid-in capital' for what in the past would have been the sum of stated capital plus paid-in surplus. Accordingly, Section 19 dealing with the determination of stated capital has been deleted, and numerous other sections have been simplified.

The 1983 Act also provides that shares repurchased by a corporation, in the absence of provisions to the contrary in the Articles, become authorized but unissued shares and the concept of treasury shares has been deleted from the 1983 Act. Section 6 [(Ill. Rev. Stat. 1985, ch. 32, par. 9.05)] has been redrafted to reflect this approach, and Section 60a [(Ill. Rev. Stat. 1985, ch. 32, par. 9.15)] has been redrafted to establish the mechanism for a corpora-

tion to reduce paid-in capital." C. Murdock, 2 Ill. Bus. Corp. Act Ann., app. D, § II, at 209 (3d ed. Supp. 1984).

An experienced corporate law practitioner concluded that upon the enactment of the Business Act, "the concept of corporate capital *** serves the single purpose *** of providing the basis for the Illinois corporate franchise tax and license fee." J. Van Vliet, *New Illinois Business Corporation Act Needs More Work*, 61 Chi.-Kent L. Rev. 42 (1985). Then, the General Assembly amended section 1.80(j) to place it in the form pertinent here, repealed section 9.15 and amended section 14.25. Pub. Act 84—1412, art. 14, § 1, eff. January 1, 1987 (1986 Ill. Laws 3470, 3500-01, 3510, 3507-08) (amending Ill. Rev. Stat. 1985, ch. 32, par. 1.80(j); repealing Ill. Rev. Stat. 1985, ch. 32, par. 9.15; amending Ill. Rev. Stat. 1985, ch. 32, par. 14.25).

Section 14.25 of the Business Act concerns certain required reports to the Secretary concerning changes in paid-in capital. The original section 14.25 required such a report when paid-in capital was reduced by either a capital deduction or a repurchase of shares. See Ill. Rev. Stat. 1985, ch. 32, par. 14.25. The amended section makes no mention of a capital distribution. See Ill. Rev. Stat. 1987, ch. 32, par. 14.25.

■ We conclude that the combined effect of these amendments was that, although former concepts of corporate capital were not all retained, the concept of paid-in capital was significant not only in regard to franchise taxes but also in regard to protection the Business Act was deemed to give to shareholders or creditors, although the protection is not easy to define. In eliminating the words "less any distribution therefrom" from the definition of paid-in capital under section 1.80(j) of the Business Act and adding a provision to reduce the amount of paid-in capital arising from the repurchase of shares, the General Assembly seemed to have indicated that paid-in capital could not be reduced by "distribution therefrom." Ill. Rev. Stat. 1985, ch. 32, par. 1.80(j); Ill. Rev. Stat. 1989, ch. 32, par. 1.80(j).

The foregoing interpretation is made more certain by the action in repealing section 9.15 of the Business Act, which spoke of permitting the reduction of paid-in capital by legally permissible "liquidating dividends." Ill. Rev. Stat. 1985, ch. 32, par. 1.80(j). This interpretation is not negated by the continued existence of section 9.10 of the Business Act, which speaks of distributions in general without any reference to those arising from capital. See 805 ILCS 5/9.10 (West 1994). Our interpretation of the effect of the amendments is consistent with that of the third district in *Caterpillar Finance Corp. v. Ryan*, 266 Ill. App. 3d 312, 640 N.E.2d 672 (1994). There, a foreign corporation attempted to reduce its paid-in capital by a partial

liquidating deduction prior to reporting a reduction of the shares and was held liable for a franchise tax based upon a paid-in capital not reduced by the distribution.

■ When viewed merely upon the question of a valid basis for a franchise tax, a substantial difference between a reduction for a repurchase of shares and a reduction for a distribution of capital is difficult to find. However, when viewed upon the question of a protection for shareholders and creditors, a difference is more apparent. Each theoretically reduces the corporate capital, but a shareholder can resist any diminution of its propriety interest by refusing to sell if the proposed transaction is deemed detrimental to that interest. A shareholder has no similar remedy to an unwise return of capital. Considering the great deference given to the validity of statutory classifications by *Allegro* and *Geja's Cafe*, we hold there is a rational basis for the classification here.

Clearly, a rational system of capitalization, one which serves public policy (*Searle*, 117 Ill. 2d at 468, 512 N.E.2d at 1246), is a proper basis for determination of a franchise tax. No authority has been called to our attention which prohibits use of such a basis, even though in detail some classifications result which are not themselves a rational basis for purely tax purposes.

We recognize that Venture is a foreign corporation, and this state does not have control over its capitalization except as it affects its franchise tax. However, the treatment of domestic and foreign corporations on an equal footing is a rational consideration in imposing those taxes.

Venture has characterized much of its argument on the basis that the instant taxes violate the second rather than the first sentence of the uniformity clause on the basis that a reduction from its paid-in capital because of its capital distribution was a "deduction" within the meaning of that sentence. We need not decide whether the first or the second sentence of the uniformity clause is the key to this case because, in any event, the question is whether a rational basis exists for the taxes, and we have concluded that a rational basis was shown.

Accordingly, we affirm.

Affirmed.

GARMAN, J., concurs.

JUSTICE COOK, dissenting:

In 1989, May decided to dispose of its discount retail business. It

did that by transferring all the assets and liabilities of its Venture division to its wholly owned subsidiary, Venture Stores, Inc., a Delaware corporation. As a result, Venture's paid-in capital increased from $1,000 to $319,029,539. Then in 1990, Venture made a liquidating distribution of $262,500,000 to May. Venture did not acquire or cancel any of its stock in connection with that distribution; both before and after the distribution May owned all 1,000 shares of Venture common stock. On September 28, 1990, the shares of Venture's common stock were split 16,808 to 1, and the shares were distributed to May's shareholders. Venture is now a publicly owned and traded company.

In accordance with generally accepted accounting principles (GAAP), the distribution was shown on Venture's books, and in reports submitted to the Internal Revenue Service and to the Securities and Exchange Commission, as a decrease in the capital of the corporation. However, because Venture did not acquire or cancel any of its shares in connection with the distribution, Venture was not allowed to reduce its Illinois "paid-in capital," on which its annual franchise tax is based. See Ill. Rev. Stat. 1989, ch. 32, par. 1.80(j); *Caterpillar*, 266 Ill. App. 3d 312, 640 N.E.2d 672.

If May had surrendered just one share for cancellation in connection with the distribution, paid-in capital could have been reduced. See Ill. Rev. Stat. 1989, ch. 32, par. 1.80(j) (reduction "to the extent of the amount of paid-in capital represented by such acquired shares"). The Department disagrees that the surrender of just one share would have been effective. See 805 ILCS 5/1.80(j) (West 1992) (paid-in capital is reduced by "cost of the reacquired shares or a lesser amount as may be elected by the corporation"). Whatever the number, it is clear that if May had surrendered some shares for cancellation, its paid-in capital would have been reduced. There is no indication in the record that May or Venture would have been disadvantaged by surrendering and canceling shares. May owned all the stock of Venture, whether it owned 1,000 shares, 500 shares, or 5 shares. The Department suggests the choice to proceed by way of a liquidating dividend could have been "sheer carelessness" on Venture's part, or it could have been a calculated decision "perhaps because a liquidating dividend had certain financial advantages." The Department does not indicate what those financial advantages might be. It would appear to be easy for a corporation that does business in many states to overlook Illinois' unusual definition of paid-in capital.

Although Venture's assets have now been permanently reduced by $262,500,000, its paid-in capital can never be changed to reflect that reduction. Once the distribution was made, it was too late for

Venture to acquire and cancel any shares. Section 14.25 of the 1983 Business Act is construed "as requiring the cancellation of a corporation's shares to occur prior to or contemporaneously with the reduction in paid-in capital." *Caterpillar,* 266 Ill. App. 3d at 319, 640 N.E.2d at 677. It is clear, after *Caterpillar,* that Illinois law distinguishes between (1) liquidating distributions and (2) distributions accompanied by the acquisition and cancellation of shares. The second reduces paid-in capital, the first does not. The question now before the court is whether that distinction violates the uniformity clause of the Illinois Constitution. Ill. Const. 1970, art. IX, § 2. The constitutional issue was not addressed in *Caterpillar.*

Where a good-faith uniformity challenge is made, the taxing body must produce a justification for its classifications. The taxpayer then has the burden to persuade the court that the taxing body's explanation is insufficient as a matter of law or unsupported by the facts. *Geja's Cafe,* 153 Ill. 2d at 248-49, 606 N.E.2d at 1216. The Department's proffered justification here is that a liquidating distribution is "essentially a forbidden transaction," that "Illinois no longer permits liquidating dividends or any other reduction of paid-in capital unaccompanied by the redemption of shares."

Liquidating distributions are certainly legal in Illinois. Section 9.10 of the 1983 Business Act specifically allows any distributions to shareholders, so long as those distributions do not violate the corporation's articles of incorporation, render the corporation insolvent, reduce the corporation's net assets below zero, or affect the rights of preferred shareholders. Ill. Rev. Stat. 1985, ch. 32, par. 9.10. Sections 9.15(a) and (c) of the 1983 Business Act allowed paid-in capital to be reduced by liquidating dividends "as permitted by law" (the limitations found in section 9.10). Ill. Rev. Stat. 1985, ch. 32, pars. 9.15(a), (c). Section 9.15 of the 1983 Business Act was repealed in 1987 (Pub. Act 84—1412, art. 14, § 2, eff. January 1, 1987 (1986 Ill. Laws 3470, 3510)), but section 9.10 remains intact. Under current law liquidating distributions can be made in Illinois, they just do not reduce paid-in capital.

The 1983 Business Act made major changes in Illinois law. The 1983 Business Act abandoned the idea that creditors and preferred shareholders could be protected by forcing the corporation to retain assets in the form of "stated capital" and "paid-in surplus." C. Murdock, 2 Ill. Bus. Corp. Act Ann., app. F, § 1.80(j), at 372 (3d ed. Supp. 1984). Even before the 1983 Business Act, that protection could be avoided by the authorization of shares with a nominal par value or without par value, and by other shareholder action. The 1983 Business Act cut the heart out of the franchise tax. The franchise tax was

based on the level of corporate capital, and once there was no statutory requirement that capital accounts be maintained, there was nothing to prevent reduction of paid-in capital to the minimum level. The only reason corporate capital was important, after the 1983 Business Act, was in computing the franchise tax and license fee. J. Van Vliet, *New Illinois Business Corporation Act Needs More Work*, 61 Chi.-Kent L. Rev. 42 (1985).

In 1987, the legislature responded to protect the franchise tax. The response was not to repeal the 1983 Business Act or to ensure that corporate capital was held at certain levels. Instead the legislature repealed section 9.15 of the 1983 Business Act, which had provided that paid-in capital could be reduced by liquidating distributions and other methods, and changed the section 1.80(j) definition of paid-in capital to state that reductions could only be "effected by an acquisition of its own shares." Pub. Act 84—1412, art. 14, § 1, eff. January 1, 1987 (1986 Ill. Laws 3470, 3501). The 1987 amendments addressed form and not substance. Paid-in capital could be reduced, just not by liquidating distributions. The 1987 amendments attempted to slow corporate reductions of paid-in capital, not by requiring that paid-in capital be maintained at some level, but by placing impediments in the way of reduction. (Distributions accompanied by the acquisition and transfer of stock are more difficult than other distributions, especially if the company is widely held.) The 1987 amendment also appears to be a trap for the unwary.

Always before, the statute had been concerned with substance, the level of capital in the corporation. Reductions could be made by any method, so long as they were "effected in a manner permitted by law" (Ill. Rev. Stat. 1981, ch. 32, pars. 157.2—11, 157.2—12), that is, so long as a certain level was maintained. For the first time in 1987, the concern was with the form of the transaction, not with the level of remaining capital.

"[T]he classification must be based on *a real and substantial difference between the people taxed and those not taxed.*" (Emphasis in original.) *Searle*, 117 Ill. 2d at 468, 512 N.E.2d at 1246. There is no difference as far as corporate capital is concerned between a corporation which passes out capital through a liquidating distribution and one which does so through a distribution accompanied by the acquisition and cancellation of stock. Both distributions are legal in Illinois, and both reduce the level of capital in the corporation. The only difference between the two forms of distribution is in tax consequences. The Department's argument is that liquidating distributions result in taxation, while distributions in connection with acquisition and cancellation do not, because the statute says so. That is not sufficient

justification under the uniformity clause. Disparity in tax treatment may not be justified simply because it generates state income. *Searle*, 117 Ill. 2d at 477-78, 512 N.E.2d at 1250.

The majority argues that the concept of paid-in capital may have some significance in regard to protection of shareholders or creditors. That is not correct. The $262,500,000 in this case is out of the corporation. Those funds are no longer available to Venture's shareholders or creditors, and there is no cause of action for their removal, because those funds were legally distributed. The fact that for Illinois franchise tax purposes Venture's paid-in capital is considered to be $319,029,539 provides no protection for anyone.

The Department's argument that Illinois is not "obligated to arrange its corporate law, and its franchise tax in particular, to conform to the law in other jurisdictions" is off the mark. Illinois corporations, as well as Delaware corporations, are allowed to make liquidating distributions. The refusal to allow Illinois corporations to reduce paid-in capital unless that reduction is accomplished by a distribution accompanied by acquisition and cancellation of shares violates the uniformity clause. Venture's argument is not based on its status as a foreign corporation.